William Leon PINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 58798.

Court of Criminal Appeals of Texas, Panel No. 2.

May 14, 1980.

Michael W. Hubbard, Tyler, for appellant.

William D. Knowlton, County Atty., Henrietta, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder. Punishment, enhanced by proof of two prior felony convictions as alleged in the indictment, was assessed at life imprisonment. We affirm.

In his first ground of error, appellant asserts that "[t]he trial court erred in denying the *Gaskin* Rule by overruling appellant's time and motion [sic] to examine witnesses' prior transcribed, recorded, and signed statement for purposes of cross-examination."

At the guilt-innocence phase of the trial, the State called an accomplice witness, Clyde Burns. Under cross-examination, Burns revealed that he had given a statement which was taped and later transcribed. The record reflects the following testimony in regard to this statement:

"A  [By the witness Burns]: I gave—when I was first arrested—it wasn't a statement. It was on a tape, and it came out to 46, is the only one that I ever—

"Q  [By Mr. Hubbard (Appellant's Counsel)]: 46 pages?

"A  Yes, sir, I think it was.

"Q  You signed it?

"A  Yes, sir, I believe I did.

"Q  You did sign it?

"MR. MARTIN [Special Prosecutor]: No, he didn't sign it.

"MR. HUBBARD: Where is it?

"MR. MARTIN: It is in Wichita Falls. It hasn't got anything—it has got this case in it. It has got other cases in it.

"MR. HUBBARD: Your Honor, I believe we have a right to anything that this witness has said in regard to any crimes.

"THE COURT: No, sir. You don't have, Mr. Hubbard.

"MR. HUBBARD: Note our exception."

The record shows no further request by appellant for access to the witness Burns' statement.

■   Prior to trial, the trial court granted appellant's discovery motions directed to the discovery of "[a]ny and all written or recorded statements made concerning this case by any persons who are prospective prosecution witnesses." It can not be argued that this action of the court preserved appellant's rights under the rule of *Gaskin v. State*, 172 Tex.Cr.R. 7, 353 S.W.2d 467 (Tex.Cr.App.1962). *See* V.A.C.C.P., Art. 39.14 (1979). The *Gaskin* Rule is invoked by a request made *after* a witness has testified on direct examination for his previous written statements. *Gaskin*, supra at 469. Accordingly, we must look to the above-quoted colloquy to determine if appellant preserved his rights under the rule. It is axiomatic that *Gaskin* provides no authority for appellant's assertion that he had "a right to anything that [a] witness has said in regard to *any* crimes." (emphasis added). Consequently, the trial court's response can hardly be characterized as a denial of rights secured by that case.

Even were we of the view that the statement quoted above was sufficient to apprise the trial court that appellant sought to invoke the *Gaskin* Rule, we nevertheless hold that reversible error is not shown. The holding of the *Gaskin* case mandates that, "where a State's witness has made a report in writing prior to testifying, the defendant, after a timely motion or request, is entitled to inspect and use such prior report

for cross-examination and impeachment purposes after the witness has testified, and this right obtains whether or not the witness has used the instrument to refresh his memory." *Howard v. State*, 505 S.W.2d 306, 309 (Tex.Cr.App.1974). Nonetheless, "[e]ven though the trial court may be in error in refusing the defendant such right, such is not reversible error unless the accused can show harm. The harmfulness of the error is dependent upon whether an examination *by the appellate court* demonstrates that the defendant should have been allowed the statement for purposes of cross-examination and impeachment. Reversible error is shown if the defendant is denied the opportunity to have made available the report for the appellate record in order that injury, if any, may be shown." (Emphasis in original). (Citations omitted). *Moore v. State*, 509 S.W.2d 349, 352 (Tex.Cr.App. 1974).

As in *Moore*, supra, the appellant here, having received an adverse ruling, if indeed that is what the quoted exchange reveals, made no further effort to obtain the witness's statement. Under these circumstances, where appellant has made no effort to have the statement of Burns included in the record on appeal, no reversible error appears. Appellant's first ground of error is overruled.

In his second ground of error, appellant asserts that the evidence was insufficient to sustain the conviction "when the testimony of an accomplice witness was not corroborated."

Kenneth Keith, the brother of the deceased, testified that he and his brother lived together until the time of his brother's death. The witness stated that he had owned a large coin collection but that he had donated it to the American Numismatic Association prior to the death of his brother. He stated that he and his brother also collected guns, both antique and modern. On the evening of July 12, 1975, the witness was awakened by an outcry from his brother. The witness testified that he went to where his brother lay, obviously dead. He was accosted by a man with a pistol who

ordered him to return to his own room and then tied him up with duct tape. This man the witness later identified as Lonnie Dale Loyd, a co-defendant.

Loyd was called at a witness by the State. He testified that he discussed robbing the Keith residence with William Leon Pinson, Clyde T. Burns, Earl Culwell and Alton Woodruff Fanchier, Jr., also known as Woody Fanchier. The proposed robbery was discussed at the Fanchier residence in the presence of Ingrid Fanchier, Woody Fanchier's wife. According to the plan, the witness was to go into the house and subdue the Keith brothers while appellant was "to back him up." The witness carried a pistol and appellant obtained a shotgun at the Fanchier house. Loyd and appellant then drove in the direction of the Keith residence in a pickup truck borrowed from one Mike Swan. On the way, they stopped to gas up the truck and encountered Manuel and Marilyn Garcia at a convenience store filling station. Loyd and Manuel Garcia, who had "played baseball together on and off for years," stopped to discuss the reason for Loyd's quitting the softball team on which they both played.

After the witness and appellant arrived at the Keith residence, the witness ripped open a screen door and encountered the deceased, Jim Keith. The witness told Mr. Keith to lie still but Mr. Keith "gave a little yell, and then got up and started running toward the door that leads to the hall in the middle of the house." In response to the State's question as to what happened next, the witness stated, "I was about—I was just pulling my other leg through the door, and that is when I heard the shotgun go off." The witness stated that he then "saw Mr. Keith get hit, and then I looked back toward the window where it came from." The prosecutor then asked:

"Q   And what did you see when you looked back toward the window where it came from?

"A   I saw the barrel of the shotgun, and Mr. Pinson holding it.

"Q   And you say you saw the barrel. Was it sticking through the screen?

"A    I believe, at the time that I saw it, it was barely through the screen.

"Q    And on the other end of the shotgun was this defendant, William Leon Pinson?

"A    Yes, sir."

The deceased's brother then arrived upon the scene, whereupon the witness, Loyd, forced him to return to his bedroom and there tied him up with duct tape. The witness and appellant then carried off the gun collection which the deceased and his brother kept at the house. The guns were loaded onto the pickup which appellant had parked by the porte cochere. The witness and appellant then took them to Dallas and there placed then in storage. Appellant signed the lease agreement for the storage space.

Article 38.14, V.A.C.C.P., provides that:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

In *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968), this Court laid down the following rule:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not."

Moreover, "[t]he corroborating testimony need not be sufficient in itself to establish the guilt of the accused, for if this were true the testimony of the accomplice would be of no value. The evidence is sufficient if it tends to connect the defendant with the offense." (Citations omitted.) *Rogers v. State*, 461 S.W.2d 399, 402 (Tex. Cr.App.1971). See *Brown v. State*, 561 S.W.2d 484 (Tex.Cr.App.1978).

In the instant case, Ingrid Fanchier testified that appellant was among those who conspired to rob the "old men" of their coin collection and antique guns. She testified that appellant and Loyd left the apartment together; that Loyd carried a pistol and that appellant was in possession of a shotgun.

Manuel Garcia testified that he encountered Loyd and the appellant on an evening in the "middle or last part of July" of 1975. He stated that he knew Loyd from having played baseball with him and against him over several summers, that in fact, at the time in question he and Loyd were playing on the same softball team. He stated that at the time of his encounter with Loyd at the grocery store filling station he asked him "what he was doing with that older man," but Loyd would not tell him. In response to a question, Garcia stated that the older man was appellant, Pinson. Marilyn Garcia corroborated her husband's testimony, stating that she recalled meeting Loyd and appellant at the E-Z store on the night in question. She also testified as did her husband, that Loyd and appellant were driving a pickup truck.

In *Rogers*, supra, we stated, quoting 23 C.J.S. Criminal Law Section 812(4)f., p. 118:

"[P]roof that accused was at or near the scene of the crime at or about the time of its commission is admissible in corroboration of the testimony of the accomplice, and may tend to connect accused with the commission of the crime, so as to furnish sufficient corroboration to support a conviction when coupled with suspicious circumstances, such as unseasonableness of the hour, without reasonable explanation therefor    *   *   * lack of apparent reason for such presence *   *   *  being in the company of the accomplice    *   *   *  subsequent flight, *   *   *."

The witness Sylvia Hawk testified that she worked at a Western Auto store in Dallas. She identified the appellant as the man who bought a padlock from her on the 14th of July, 1975. She testified that she

had previously identified appellant from a picture shown to her by Texas Rangers in November of 1975.

Texas Ranger Tommy Walker testified that he took possession of a motel registration card from the Anchor Motel in Dallas. The registration card, according to his testimony, bore the signature of Bill Hinson. The home address given was that of the appellant's mother in Wichita Falls. Ranger Walker testified that he also recovered a lease agreement for a storage locker bearing the same signature of Bill Hinson. He testified that the address provided on this lease agreement did not exist and that the driver's license number noted thereon was that of Lonnie Dale Loyd.

H. L. Felker, a handwriting expert, testified that the handwriting appearing on the motel registration card and the storage locker lease agreement was that of the appellant.

Perry Calvin Layfield, Jr., testified that on the nights of the 12th and 13th of July 1975, he was employed as a night clerk at the Anchor Motel in Dallas. He identified appellant as the man who signed the registration card above referred to. He stated that while appellant filled out the registration card another person waited for him in a pickup truck.

Clifton R. Stanley testified that he placed several of the guns stolen from the Keith residence in the self-storage locker leased by appellant.

■ In the instant case, if we omit the accomplice testimony, there is the testimony of an independent witness that appellant engaged in a conspiracy to rob the deceased and his brother and that he left the apartment where this conspiracy was hatched in possession of a shotgun. It was established that the deceased was killed by a deer slug fired from a shotgun. Furthermore, the Garcias testified to seeing appellant in the company of Loyd in the vicinity of the murder scene and close to the time of its commission. Finally, it was shown that appellant leased a storage locker in which were found the fruits of the crime. This evidence was clearly sufficient to support the accomplice testimony adduced in this case. Appellant's second ground of error is overruled.

In his third ground of error, appellant complains that the trial court erred in failing to submit a requested charge on circumstantial evidence.

■ A charge on circumstantial evidence is not required where the defendant's participation in the crime is shown by the testimony of an accomplice. *Wagner v. State*, 463 S.W.2d 432, 434 (Tex.Cr.App. 1971); *Washington v. State*, 434 S.W.2d 138 (Tex.Cr.App.1968). Moreover, it is a rule of ancient lineage in our jurisprudence that where there is evidence of an admission by one accused of murder that he killed the deceased the necessity for a circumstantial evidence charge is dispensed with. As stated in *Gray v. State*, 100 Tex.Cr.R. 195, 272 S.W. 469, 470 (Tex.Cr.App.1925), ". . . it has also been the universal holding that proof that defendant admitted or confessed having killed the deceased is direct and not circumstantial evidence of the main inculpatory fact, and a charge on circumstantial evidence is not required when proof of such admission or confession is in evidence. (Citations omitted)." Evidence of such an admission is properly received though it comes from an accomplice witness. *Swift v. State*, 509 S.W.2d 586, 590 (Tex.Cr.App. 1974).

Clyde Burnes, an accomplice, testified that he was eating supper with Earl Culwell and some others when "Woody Fanchier came running into the restaurant and told me and Earl that he needed to see us outside." He stated that he, Fanchier and Culwell drove out toward the Keith house. Eventually, appellant met with the three accomplices above named. The record reflects the following testimony:

"Q  Did you have a conversation with this defendant, William Leon Pinson . . . ?

"A  Yes, sir.

"Q  And what did he say to you, and what did you say to him?

"A   I got out of the car, along with Earl, and Woody jumped out of the pick-up, and all three of us was standing there, and Pinson said, 'I shot one of the old men, and he is dead.' "

This testimony of Burns and that of Loyd relating to appellant's actions at the time of the slaying, when considered in the light of the long-established rules of law above stated, makes it abundantly clear that no error attended the trial court's refusal to submit the requested charge. Appellant's third ground of error is overruled.

Appellant, by *pro se* supplemental briefs, assigns additional grounds of error. By a prior order, this Court postponed a decision on the State's motion to suppress these supplemental briefs. Appellant filed an exception to the State's motion. It appears to be his contention that since the trial court granted his motion requesting that he be permitted to serve as co-counsel at trial he is excused from the requirements of Article 40.09, V.A.C.C.P., because notice of completion of the record was not given to him. Our reading of the record reveals that appellant was not appointed co-counsel on appeal. Accordingly, he was not entitled to personal notice of completion of the record nor was he entitled to file an untimely brief. We now grant the State's motion to suppress appellant's supplemental briefs.

The judgment of the trial court is affirmed.