Michael **FRANCIS**, Appellant,

v.

**STATE** of Texas, Appellee.

No. 04–81–00095–CR.

Court of Appeals of Texas,
San Antonio.

July 14, 1982.

J. Keith Alaniz, San Antonio, for appellant.

Bill White, Dist. Atty., Linda S. McDonald, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CLARK, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a conviction of murder with malice. After finding appellant guilty, the jury assessed punishment at 90 years' confinement.

Appellant, Jerome La Cour, Eugene Autry, Ron McCaskill, Earl Brown, and Danny Speed were together at various locations on the east and west sides of San Antonio for most of the afternoon and evening of September 25, 1973. During the evening, these

six men were riding around on the west side in Autry's car with Autry driving. At approximately 8:30 p. m., Autry pulled into the John Jay High School parking lot which is adjacent to the back side of the Lone Star Ice House. Appellant, Speed and McCaskill went into the ice house while La Cour, Autry and Brown waited in the car. The most critical evidence concerning the events that occurred at the ice house is direct testimony given by Janie La Cour [1] of appellant's having orally confessed to the crime. [2] This testimony, supplemented by other State's evidence provided by Jerome La Cour and Eugene Autry, the police and the medical examiner, presents sufficient evidence upon which the jury could render its verdict.

Police testimony and photographs set the crime scene. As one enters the ice house, the milk cooler is located straight ahead on the far wall though slightly to the left. In order to reach the milk cooler, one has to pass between the attendant's counter, which is on the left, and the racks displaying nonperishable goods, which are to the right. The check-out counter had been knocked forward and the body of the victim, store clerk Mark Erlich, was lying behind it. Goods such as cigarettes and matches had been knocked off the display racks and were scattered in front of the fallen counter. One item particularly significant was a carton of milk found within this disarray on the floor. This carton of milk is important because of testimony given by Janie La Cour about appellant's oral admission to her. Apparently, appellant

told her that he had gone to the milk cooler and had taken the carton of milk to the counter as though he were going to pay for it. Not only does Janie's testimony connect appellant with the milk carton, but fingerprints were lifted from the handle of the milk cooler. Appellant's own testimony also places him in the vicinity of the milk cooler. [3] Other incriminating evidence found by the police was Ron McCaskill's palm print found on the left side of the attendant's counter, indicating that McCaskill had stood almost directly in front of Erlich. [4] The positioning of the robbers is important because of the medical examiner's testimony concerning the bullet wounds the victim suffered and the caliber pistol that fired the shots. Dr. Ruben Santos testified that at least three .22 caliber slugs were taken from critical locations in the victim's body, and that only one .38 caliber slug was discovered. The direction of travel in the body indicates that the .22 bullets were fired from the right, from the vicinity of the milk cooler, while the .38 bullet came from the door. The evidence presented thus far presents a clear picture of how the crime was perpetrated. The evidence that follows clarifies the identity of the gunmen.

While this crime was taking place, Earl Brown and the two persons who were called by the State to testify, Jerome La Cour and Eugene Autry, were waiting in the car. Both La Cour and Autry claimed at trial that they had no idea that this crime was going to occur, even though they both testified that while they were driving around someone in the car had stated a desire to

1. Janie La Cour is Jerome's sister and was, at the time of the offense, Danny Speed's girlfriend. During their travels on September 25, one of the locations visited by the six men was the La Cour residence. Janie visited with these men that day but there is no evidence to indicate that she had anything to do with the crime. As indicated, however, she later became the appellant's confidant.

2. *See Acy v. State*, 618 S.W.2d 362, 365 (Tex. Cr.App.1981) (confession must be unequivocal). Janie La Cour testified on direct examination as follows:
   Q: But, Michael Francis told you that he shot the man?

A: Yes.

3. In his testimony, appellant stated that he dodged a ricocheting bullet. Police testimony establishes that a bullet hole was found just inches from the milk cooler. Appellant also admitted being on the far side of the store.

4. Appellant also confirmed the position of the robbers. He testified that he went into the store first and positioned himself on the right. Ronald McCaskill followed and was in front of the attendant. Danny Speed was to the left, near the door.

make some money. This crime took place shortly thereafter. Both La Cour and Autry testified that at various times during the day they had seen Speed in possession of a .38 caliber pistol and that appellant was in possession of a .22 caliber pistol that Speed had given him. There is no evidence to indicate that Ron McCaskill ever had possession of a weapon. Both testified that McCaskill was the first to return to the car from the ice house. He excitedly exclaimed that after Speed fired a shot at Erlich and missed, appellant shot Erlich. While La Cour's testimony does not place these weapons in possession of Speed and appellant at the time of the crime, Autry was able to be more specific. He stated that he saw Speed with the .38 and appellant with the .22, not only when they got out of the car to go into the ice house but also when they returned from the ice house. Autry also testified that upon returning to the car, appellant stated that he had shot Erlich.

Appellant testified that he had been in the store with Speed and McCaskill when the robbery occurred. He denied knowing beforehand that a crime was going to be committed and denied shooting Erlich or otherwise participating in the robbery. He blamed the robbery and killing on Speed and McCaskill. It is with this testimony in mind, as well as that proffered by the State, that we will assess the grounds of error raised by the appellant.

Before assessing the twelve grounds of error, we must dispose of the State's motion to dismiss appeal for noncompliance with Tex.Code Crim.Pro.Ann. art. 40.09 (Vernon 1979). The State asserts that the appellant's brief was filed late, and claims that appellant did not justify the fact that the record was not approved earlier than April 1980.

The record indicates that the appellant made a timely filing of his notice of appeal on June 2, 1977. On August 25, 1977, a motion for extension of time to file court reporter's notes was filed and the extension was granted until September 21, 1977, on which date the record was completed and filed. In accordance with § 7 of art. 40.09,

the appellant filed objections to the record on October 6, 1977; however, the record was not approved by the trial court until April 3, 1980. Appellant's brief was filed on April 11, 1980.

■ Section 7 of art. 40.09 requires that upon objections to the record being filed, the court shall set the matter down for hearing and thereafter enter the appropriate order. The approval of the record by the court triggers the appellant's duty to file his brief with the trial court within 30 days. Tex.Code Crim.Pro.Ann. art. 40.09 § 9. The appellant fully complied with the article. The time lapse between the appellant's objections to the record and the order of the court was the result of the trial court's delay. Since there are no time limits within which the court must approve the record, we find that the State's motion to dismiss is without merit, and is denied. *See Reese v. State*, 481 S.W.2d 841, 843 n.2 (Tex.Cr.App.1972).

■ In grounds of error one through four, appellant raises issues of insufficiency of evidence. However, the appellant predicates his appeal upon the determination that this is a circumstantial evidence case. We disagree. The distinction between a direct evidence and a circumstantial evidence case is critical in Texas. *See Nathan v. State*, 611 S.W.2d 69, 75 (Tex.Cr.App. 1981); and *Galvan v. State*, 598 S.W.2d 624, 627 (Tex.Cr.App.1979). In a circumstantial evidence case, the jury must not only find the defendant guilty beyond a reasonable doubt, as in a direct evidence case, but also must find that the evidence negates every other reasonable hypothesis except defendant's guilt. The appellant would obviously prefer an analysis of the sufficiency question in light of the circumstantial evidence test, since it is a stricter standard by which guilt is determined.

In the instant case, appellant related the details of the crime to Janie La Cour. Janie La Cour, in turn, gave the police a written statement regarding this extrajudicial confession. In her testimony at trial, some of the pertinent details of the confession were elicited from her. The question then

is whether this testimony concerning the extrajudicial confession is direct or circumstantial evidence.

■ Direct evidence is evidence which demonstrates the ultimate fact to be proved, while circumstantial evidence is direct proof of secondary facts which demonstrate the ultimate fact by inference. *Acy v. State*, 618 S.W.2d 362, 363–64 (Tex.Cr. App.1981). It is well-settled that direct testimony, from any source, that the defendant caused the death of the deceased characterizes the case as a direct evidence case. *Pinson v. State*, 598 S.W.2d 299, 303 (1980); *Sloan v. State*, 515 S.W.2d 913, 917 (Tex.Cr. App.1974); *Smith v. State*, 470 S.W.2d 696, 697 (Tex.Cr.App.1974); *Miers v. State*, 157 Tex.Cr.R. 572, 251 S.W.2d 404, 407 (1952). The testimony of Janie La Cour established the ultimate fact at issue—the murder of Mark Erlich by appellant.[5]

■ Even though there is direct evidence by the extrajudicial confession to Janie La Cour the conviction of appellant cannot be upheld by this confession alone. The confession must be corroborated by evidence establishing the corpus delicti.[6] This corroborating evidence need not conclusively establish the corpus delicti nor be completely independent of the confession, but there must be sufficient facts and circumstances in evidence to establish that a crime has been committed. *White v. Stae*, 591 S.W.2d 851, 863–64 (Tex.Cr.App.1979); *Adrian v. State*, 587 S.W.2d 733, 734 (Tex.Cr.App. 1979). The evidence supplied by the police witnesses and the medical examiner goes beyond mere corroboration and by itself conclusively establishes the corpus delicti. The confession reinforces this independent evidence and, more important, establishes the appellant as one of the gunmen.

**5.** Eugene Autry also testified that appellant admitted to him that he shot the victim. Even if one or all of these individuals are found to be accomplice witnesses, such testimony is still direct evidence of the ultimate issue. *See Pinson v. State*, 598 S.W.2d 299, 303 (Tex.Cr.App. 1980); *Swift v. State*, 509 S.W.2d 586, 590 (Tex.Cr.App.1974).

**6.** There are two elements of corpus delicti in a murder case:

■ Considering the evidence in the light most favorable to the verdict, we find that it supports the jury in its finding of guilt beyond a reasonable doubt. A rational jury readily could have concluded that the evidence was sufficient. *See Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979); *Martin v. State*, 623 S.W.2d 391, 396 (Tex.Cr.App.1981). Grounds of error one through four are overruled.

In grounds of error five, six and seven, appellant complains that the trial court erred in overruling his requested charge that Eugene Autry and Jerome and Janie La Cour were accomplice witnesses as a matter of law. In ground of error six he raises the contention that the trial court erred in refusing to submit to the jury the question of whether all three were accomplice witnesses as a matter of fact. The only such issue submitted by the court in its charge to the jury was whether Eugene Autry was an accomplice witness as a matter of fact.

■ An accomplice witness is a person who has participated with another before, during or after the commission of a crime. *Russell v. State*, 598 S.W.2d 238, 249 (Tex. Cr.App.1980). If one cannot be prosecuted for the offense with which the accused is charged, then one is not an accomplice witness. 598 S.W.2d at 249. We hold that there is no indication that Janie La Cour participated in the crime to the extent that she could be charged with the offense of murder. Therefore, she was not an accomplice witness within the meaning of Tex. Code Crim.Pro.Ann. art. 38.14 (Vernon 1979). *See also* Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974).

(1) the body of the deceased must be found and identified; and
(2) the death of deceased must be shown to have been caused by the criminal act of another. *Shannon v. State*, 567 S.W.2d 510, 574 (Tex.Cr.App.1978).

The third element which must be shown but which is not a part of the corpus delicti is that the accused must be shown to have been the guilty agent. *See Self v. State*, 513 S.W.2d 832, 834 (Tex.Cr.App.1974).

■ There is a further question regarding the status of Jerome La Cour. While at the crime scene, he waited at the car. There is no evidence that he took part in or in any way assisted or encouraged the crime. Jerome testified that while he heard someone in the car state a desire to make some money, Jerome did not know at the time that appellant, Speed, and McCaskill went into the ice house that they were going to commit a crime. Mere presence at the crime scene does not make one an accomplice witness, nor is one an accomplice witness if he fails to disclose or even conceals a crime. *Russell v. State*, 598 S.W.2d at 249. The trial court did not err in refusing to instruct the jury that Jerome La Cour was an accomplice witness.

■ The circumstances surrounding Eugene Autry require a different analysis. Because Autry had been indicted for the offense, the trial court should have instructed the jury that he was an accomplice witness as a matter of law. *See Lafoon v. State*, 543 S.W.2d 617, 621 (Tex.Cr.App. 1976); *Silba v. State*, 161 Tex.Cr.R. 135, 275 S.W.2d 108, 109 (1954). However, if the court, as in this case erroneously submits the issue to the jury as a fact question, and proper objection is reserved

> ... the error does not require reversal unless the testimony of the witness is essential to the State's case (a) because, if the witness is in fact an accomplice, there is no evidence to corroborate his testimony, or (b) because, without the testimony of the witness ... there is insufficient evidence to support a conviction, or (c) because it is the sole corroboration of the testimony of another accomplice witness.

*Gonzalez v. State*, 441 S.W.2d 539, 541–42 (Tex.Cr.App.1969).

Because there is sufficient evidence to uphold the conviction absent Autry's testimony, we hold that his testimony is not essential to the State's case as to call for reversal. Therefore, appellant's fifth, sixth and seventh grounds of error are overruled.

■ In ground of error eight, appellant complains that the trial court in its charge misdirected the jury on the law of circum-stantial evidence. Because no circumstantial evidence charge need be given in a direct evidence case, any charge in this regard was gratuitous and did not harm the appellant. *See Pinson v. State*, 598 S.W.2d at 303; *Williams v. State*, 566 S.W.2d 919, 924 (Tex.Cr.App.1978). *See generally* Tex. Code Crim.Pro.Ann. art. 36.19 (Vernon 1981). If anything, the charge was beneficial to appellant, since a circumstantial evidence case is assessed by a stricter standard than is a direct evidence case. *See Wood v. State*, 577 S.W.2d 477, 482 (Tex.Cr.App.); *cf. Galvan v. State*, 598 S.W.2d at 629 [accused charged with acting with another as a party in commission of an offense is not entitled to circumstantial evidence charge]. Ground of error eight is overruled.

■ In his ninth ground of error, appellant contends that the trial court misdirected the jury on the law regarding common design and intent to commit an offense, in that there was no evidence to warrant submission of this charge to the jury. It has been held that where the evidence shows that the appellant was the primary actor in the offense, even though another took equal part, no charge on the law of parties is necessary. *Hannon v. State*, 475 S.W.2d 800, 802 (Tex.Cr.App.1972). However, where the evidence also supports the theory that appellant was a principal offender while acting with others and could be charged directly with commission of the offense though it was not directly committed by him, a charge on the law of parties may be given even though not alleged in the indictment. *Galvan v. State*, 598 S.W.2d at 629; *Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Cr.App.1978).

■ We believe that the evidence is sufficient to support a charge that appellant acted either alone or as a principal, and it is within the province of the jury to weigh the evidence and testimony when rendering its verdict under either theory. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Cr.App. 1974); *See generally* Tex.Code Crim.Pro. Ann. art. 36.13 (Vernon 1981); *id.* art. 38.04 (Vernon 1979). Appellant's ninth ground of error is overruled.

In ground of error ten, appellant contends that the trial court erred in failing to grant, either in whole or in part, his motion for a hearing to test the qualifications of the State's character witnesses outside the presence of the jury.

At the punishment phase of a criminal trial the Code of Criminal Procedure permits the introduction of evidence as to the appellant's general reputation and character. Tex.Code Crim.Pro.Ann. art. 37.07(3)(a) (Vernon 1981). Ordinarily, the State will elicit testimony from witnesses who have knowledge that the appellant's general reputation in the community is bad. Prior to the State's presenting such testimony, however, the trial court should allow the defendant, upon request, to test the qualifications of these witnesses out of the presence of the jury in order to ensure that the witnesses are expressing their knowledge of the defendant's reputation from information gained from others. *Crawford v. State*, 480 S.W.2d 724, 726 (Tex.Cr.App. 1972); *Weatherall v. State*, 159 Tex.Cr.R. 415, 264 S.W.2d 429, 430 (1954). What this rule seeks to prevent is testimony from a witness whose knowledge of the defendant's reputation comes exclusively from personal contact with the defendant; for example, testimony based only on information gained from an investigation into the alleged offense is improper. *Frison v. State*, 473 S.W.2d 479, 483 (Tex.Cr.App. 1971); *Stephens v. State*, 128 Tex.Cr.R. 311, 80 S.W.2d 980, 982 (1935). Assuming that the trial court did not follow proper procedure for testing qualifications of reputation witnesses, if the record does not affirmatively reflect that the witness was disqualified as a reputation witness, then the trial court's refusal to permit the testing out of the presence of the jury does not constitute reversible error. *See Gleffe v. State*, 501 S.W.2d 672, 673–74 (Tex.Cr.App.1973); *Crawford v. State*, 480 S.W.2d at 727. In the instant case, as in *Crawford*, the cross-examination of each witness revealed that each had some discussion with other people concerning appellant's reputation. The fact that some of the witnesses also based part of their testimony on personal contact with appellant or from reports about him does not disqualify them as witnesses. *Crawford v. State*, 480 S.W.2d at 726. The tenth ground of error is overruled.

In ground of error eleven, appellant seems to allege that the trial court erred in overruling his motion for new trial based on newly discovered evidence. The new evidence appellant relies upon is that Eugene Autry, in previous trials, had testified in a manner inconsistent with the evidence he gave in the trial of this case.

The trial court has considerable discretion in deciding whether to grant a motion for new trial. In order to establish an abuse of this discretion, the defendant must establish and the record must reflect *all* of the following elements:

1. that the evidence was unknown to the movant before trial;

2. that the failure to discover it was not due to the appellant's want of diligence;

3. that its materiality was such as would probably bring about a different result in another trial, and

4. that it was competent, not merely cumulative, corroborative, collateral or impeaching.

*Carlisle v. State*, 549 S.W.2d 698, 704 (Tex. Cr.App.1977).

We find appellant's contention to be without merit. Not only does he fail to support his statement that he acted with diligence in presenting this new evidence, but he does not set forth how the new evidence would necessitate a different result at another trial, especially in light of his full confession to Janie La Cour. Ground of error eleven is is overruled.

In his twelfth ground of error, appellant contends that he was denied his constitutional rights because the grand jury, impaneled in January 1975, was devoid of black Americans.

In Texas, the defendant must challenge the composition of the grand jury at the earliest time possible. Tex.Code

Crim.Pro.Ann. art. 19.27 (Vernon 1977); *See Rodriguez v. State*, 597 S.W.2d 917, 918 (Tex.Cr.App.1980), *judgment vacated on other grounds*, 453 U.S. 906, 101 S.Ct. 3137, 69 L.Ed.2d 991 (1981). Ordinarily the earliest opportunity to contest the composition is when the grand jury is empaneled. If that opportunity is not available, the proper procedure is to attack the array, before trial, in a motion to quash the indictment. *Rodriguez v. State*, 597 S.W.2d at 918. The record does not reflect that appellant challenged the array at any time. Failure to challenge at the earliest possible date by either method waives the issue. *Dumont v. Estelle*, 513 F.2d 793, 796 (5th Cir. 1975). Since appellant did not even raise the issue in his motion for new trial, but raises it for the first time in his brief on appeal, we need only state that the right to challenge the composition of the grand jury has long since been waived. Further, even if the issue had been raised at the earliest opportunity, appellant has not made any factual record of any such systematic exclusion of blacks from the grand juries of Bexar County. We will not assume the existence of such exclusion from a silent record. The twelfth ground of error is overruled.

The judgment is affirmed.