Orville Cecil MARRS, Appellant,

v.

The STATE of Texas, Appellee.

No. 63770.

Court of Criminal Appeals of Texas,
En Banc.

March 23, 1983.

Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Mike Wilson and Joe Revesz, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for burglary. Punishment, enhanced by a prior felony conviction, was assessed by the jury at forty-five years.

Appellant challenges the sufficiency of the evidence to support the conviction. The pivotal issue is whether there is sufficient evidence to corroborate the testimony of accomplice witness Jimmy Leesecamp. Leesecamp testified that he and appellant entered the Gilliam home at 4617 Meadowood Road in Dallas on October 5, 1978. They were looking for jewelry. Before they could find anything the "people came home," appellant yelled to Leesecamp and they ran to a creek. In an effort to change their appearance they both cut their "jeans off" with a knife and removed their shirts. Appellant cut his hair off. They got into the creek "to get muddy."

Corroboration of accomplice witness testimony need not be sufficient to establish the guilt of the accused and is sufficient if it tends to connect the defendant with the offense. *Pinson v. State,* 598 S.W.2d 299 (Tex.Cr.App., 1980); *Cooper v. State,* 631 S.W.2d 508 (Tex.Cr.App., 1982); Art. 38.14, V.A.C.C.P. In assessing the sufficiency of the corroborative evidence, we must eliminate the testimony of the accomplice witness.

Upon returning to her home on the date in question Sarah Ann Gilliam was unlocking the front door when she observed two young men running from her house. Upon entry of the house it was discovered that a pane had been broken out of the back door and silver and other items were on the floor. Mrs. Gilliam was unable to make a positive identification of the burglars at either the lineup following the arrest of appellant and Leesecamp the day of the burglary or at trial. She stated that the burglars were running when they left her house and only one of them looked back. She related that appellant was about "the same stature, the same build" and "looks like one of the men." Mrs. Gilliam observed that appellant's hair was shorter at the lineup and at trial than was the suspect's at the scene when his hair was almost to his shoulders. She gave the investigating officer, who was at her home within five minutes of the offense, a description of the burglars.

Sergeant William Smith stopped appellant and Leesecamp about two hours after the offense when the two suspects were jogging down a highway within a mile of the Gilliam house. Smith stated they fitted the general description given him of the burglars except that they were wearing cut-off jeans rather than blue jeans. Water was oozing out of their shoes as they ran. Appellant told the officer that they were jogging, that he lived at an address which was some twenty-five miles away and that they had no car in the vicinity. The cut-off jeans the two were wearing appeared freshly cut since the jeans were muddy and the white threads hanging down from them were clean.

After giving a statement to the police on the following day, Leesecamp accompanied Officer Crawford to an area of the creek about half a block from the Gilliam home where hair samples, two pair of pants legs and a shirt were recovered. Irving C. Stone, Chief of the physical evidence section of the Institution of Forensic Science in Dallas, positively identified the pants legs recovered at the creek as having been at one time attached to the cut-off jeans appellant and Leesecamp were wearing when they were arrested. Known hair samples of the appellant and hair recovered were determined to be the same, Stone testifying that there was "1 chance in 20 million of it coming from anybody other than Mr. Marrs [appellant]."

Appellant and Leesecamp so closely fitted the description given of the burglars that they were stopped within a mile of the scene two hours following the burglary. Physical evidence recovered the following day placed them near the burglarized house. While Mrs. Gilliam could not make a positive identification of appellant as one of the burglars she testified that "he looks like one of the men." See *Cooper v. State,* 631 S.W.2d 508 (Tex.Cr.App., 1982). She noted that his hair was longer than it was at the lineup and in court. Hair identified as belonging to appellant was found near the scene. Thus, appellant was placed at or near the scene of the crime at or about the time of its commission, without apparent reason for such presence, in the company of the accomplice. See *Rodriguez v. State,* 508 S.W.2d 80 (Tex.Cr.App., 1974). Appellant furnished an unlikely explanation as to his presence in the area when he was arrested. We find the evidence tends to connect appellant with the crime and sufficiently corroborates the testimony of the accomplice witness.

■ Appellant contends that clothing and hair samples taken from him were seized following an illegal arrest and were admitted into evidence over his timely motion to suppress.

In addition to the heretofore mentioned information in possession of the arresting officer, Officer Woodrow testified that upon leaving the Gilliam house on the date in question he received a call to go to the house across the street. A Mrs. Bill Clements who lived at that address reported that she had seen two white males in the wooded area of her premises who were headed toward the creek. This information along with the description of the men given by Mrs. Gilliam was known to arresting officer Smith. Smith along with other officers searched the creek area prior to the arrest. Thus, Smith not only had a description of the burglars as to age, size and dress but had reason to believe that they had gone to the creek. When he spotted appellant and Leesecamp within a mile of the scene of the burglary they were wet and muddy and water was coming from their shoes as they ran. The creek was described as having a steady flow of water and the area surrounding it as being very muddy. It had not rained and the officer concluded that the mud on their clothes had to come from the creek. While Mrs. Gilliam had related that the suspects were wearing jeans, it was apparent to the officers that there had been a very recent alteration resulting in the cut-off jeans the two young men were wearing.

The arresting officer had nineteen years experience on the police force, most of which had involved the investigation of residential burglaries. He had specific and articulable facts when taken with rational inferences from those facts which clearly warranted him in stopping appellant and Leesecamp. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App., 1978); *Shaffer v. State,* 562 S.W.2d 853 (Tex.Cr. App., 1978). Smith recognized appellant and was aware that he lived in Segoville. In response to questions from the officer, appellant stated that they did not have a car and were "jogging down Northwest Highway." The facts and information already known to the officer, his observations upon stopping the suspects and appellant's unlikely explanation of their presence on Northwest Highway warranted the officer

in believing that appellant and his companion had committed an offense. See *Burks v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; *Britton v. State,* 578 S.W.2d 685 (Tex. Cr.App., 1978); *Lewis v. State,* 598 S.W.2d 280 (Tex.Cr.App., 1980). We find probable cause existed for arresting appellant and evidence obtained incidental to that arrest was admissible.

We reject appellant's contention that the court erred in overruling his objection to the charge for failure of the court to instruct the jury on the law of probable cause. No factual issues were in dispute regarding the arrest of appellant. See Art. 38.23, V.A.C.C.P. *Jordan v. State,* 562 S.W.2d 472 (Tex.Cr.App., 1978).

Appellant contends that appellant, if guilty, was guilty as a party and the court should have applied the law of parties to facts of the case. It appears to be appellant's position that he was entitled to have the law of parties applied to the facts since there was no showing of entry of the house by appellant. We find the evidence to be contrary to appellant's claim. Leesecamp testified that appellant broke out the window in the back door. Leesecamp went immediately upstairs and heard appellant's warning that people were coming and "his voice was coming from inside the house." While Leesecamp testified that he went upstairs, Mrs. Gilliam testified that silverware drawers downstairs had been disturbed. This undisputed evidence reflects that appellant "entered" the house as that term is defined in V.T.C.A. Penal Code, Sec. 30.02.

It is also appellant's contention that the trial court erred in overruling his motion to quash the indictment. The indictment alleged that appellant:

"... did unlawfully, intentionally and knowingly enter a habitation without the effective consent of JOHN GILLIAM, the owner thereof, with the intent to commit theft."

Appellant maintains the indictment did not give him full and fair notice of the charges against him because it failed to limit and further define the terms "enter," [1] "habitation," "effective consent," and "owner."

When considering a motion to quash, it is insufficient to say the accused knew with what offense he was charged; rather, the question presented is whether the face of the instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App., 1979); *Haecker v. State,* 571 S.W.2d 920 (Tex.Cr.App., 1978). The motion to quash will be granted where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Thomas v. State,* 621 S.W.2d 158 (Tex.Cr.App., 1980); *Haecker v. State,* supra.

Subject to rare exceptions, an indictment that tracks the words of the penal statute in question is legally sufficient. *Thomas v. State,* supra. The terms and elements of offenses are defined within the Penal Code; definitions of terms and elements are essentially evidentiary and need not be alleged in the indictment. *Thomas v. State,* supra. The terms "owner" and "effective consent" are purely evidentiary and need only to be alleged by the State. *Thomas v. State,* supra. "Habitation" likewise is an essentially evidentiary term—a matter of proof. See *Thomas v. State,* supra.

1. The decisions of the Fifth Court of Appeals (Dallas) in *Newton v. State,* 629 S.W.2d 206 (Tex.App., 1982) (reversed by Court of Criminal Appeals on Speedy Trial question, *Newton v. State,* 641 S.W.2d 530 (Tex.Cr.App., 1982)) and the First Court of Appeals (Houston) in *Smith v. State,* 646 S.W.2d 497 (Tex.App., 1982) appear to be in conflict. The Fifth Court in *Newton* held that the indictment, in failing to further define "entry" is neither confusing nor ambiguous, and therefore, is not subject to a motion to quash. The First Court in *Smith* held that the trial court erred in denying the motion to quash because the indictment did not state with specificity the manner of entry by the appellant thereby failing to notify the defendant of the nature of the accusation against him. Petition for discretionary review was recently granted by this Court in *Smith.*

A defendant is entitled to notice of acts or omissions he is alleged to have committed. *Gorman v. State,* 634 S.W.2d 681 (Tex. Cr.App., 1982). See also *Ferguson v. State,* 622 S.W.2d 846 (Tex.Cr.App., 1980). V.T. C.A. Penal Code, Sec. 30.02, provides in part:

"(a) A person commits an offense if, without the effective consent of the owner, he:

"(1) enters a habitation, . . . with intent to commit a felony or theft;

"...

"(b) For purposes of this section, 'enter' means to intrude:

"(1) any part of the body; or

"(2) any physical object connected with the body."

"To intrude" is the "act" within the meaning of Sec. 30.02(b), supra; whether the accused intruded "any part of" his body or "any physical object connected with the body" is essentially evidentiary. In either manner employed, the defendant must use his body directly or indirectly to commit the offense. The indictment in the instant case did not deny appellant precise notice of the nature of the accusation against him, nor did it fail to act as a bar against subsequent prosecutions since the conduct alleged was distinguished from other conduct of the appellant. No error is shown in the trial court's refusal to quash the indictment.

The judgment is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, J., dissents.