David **MEDLIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–83–00239–CR.

Court of Appeals of Texas, San Antonio.

May 29, 1985.

Fred R. Granberry, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C.J., ESQUIVEL, BUTTS, CANTU, REEVES, TIJERINA and DIAL, JJ., and TRUMAN E. ROBERTS, FRED V. KLINGEMAN and ROBERT R. MURRAY, Assigned Justices *.

MURRAY, Justice (Assigned).

This is an appeal from a conviction for murder, wherein the punishment was assessed at life imprisonment. We affirm.

In his first ground of error, defendant asserts that the trial court erred in overruling his motion to set aside the indictment for a violation of the Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1985).

On original submission, a panel of this Court reversed appellant's conviction due to the State's failure to establish a *prima facie* case that it was in fact ready for trial within 120 days of the commencement of the criminal action.

The trial court held a hearing on appellant's motion to dismiss and, after hearing evidence for two days, denied the motion. The appellate record did not contain a transcription of this hearing and neither party requested that the transcription be included in the record on appeal. The State timely filed a motion for rehearing en banc, contending that the panel opinion erroneously shifts the burden of proof which is applica-

ble to appeals in criminal cases from the appellant, David Medlin, to the appellee, the State of Texas.

This appeal was previously abated by this Court with instructions to the trial court to prepare and file a supplemental record in this Court of the transcription of the court reporter's notes of the hearing on appellant's motion to set aside the indictment. TEX.CODE CRIM.PROC.ANN. art. 44.23 and 44.24(b) (Vernon Supp.1985). A record of the hearing to dismiss is now before us. Accordingly, we now address appellant's grounds of error.

The relevant facts pertaining to the first ground of error are as follows: (1) the appellant was arrested for the instant offense on November 1, 1979; (2) the appellant was indicted on February 21, 1980, 112 days after the criminal action commenced; (3) the State filed an announcement of ready on March 7, 1980, which was 126 days after the criminal action commenced (*See* Article 32A.02, section 2(a), *supra*); (4) the appellant filed his motion to set aside the indictment on April 21, 1980; (5) a hearing was held and evidence presented on said motion on April 21 & 22, 1980; (6) the motion was denied by the trial court.

Article 32A.02, section 1(1), *supra,* provides in pertinent part as follows:

Sec. 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony; ...

The State did not announce that it was ready for trial until 126 days after the commencement of this action. A timely announcement of ready is a *prima facie* showing that the State is "ready for trial" as the statute requires, but such an announcement is not essential; the State also may make a *prima facie* showing by declaring at the hearing on the motion to

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to Paragraph (d) of Article 1812, Texas Revised Civil Statutes as amended by H.B. 2244 (Acts 1983, 68th Leg., p. 1912, Ch. 354, Sec. 1, effective June 16, 1983).

dismiss that it was ready for trial within the statutory time limit. *Lee v. State*, 641 S.W.2d 533, 535 (Tex.Crim.App.1982); *Jordan v. State*, 639 S.W.2d 477, 478 (Tex. Crim.App.1982); *Scott v. State*, 634 S.W.2d 853, 855 (Tex.Crim.App.1982); *Barfield v. State*, 586 S.W.2d 538, 542 (Tex.Crim.App. 1979). Upon such a showing of "ready" the burden shifts to the defendant to show that the State was not ready within the prescribed time limit. *Barfield v. State, supra.* At the hearing on this motion to dismiss, the State's attorney stated that the State had been ready to try this case at any time since the indictment. There is no evidence in our record that the State was not ready for trial when the indictment was returned or at any time thereafter. Appellant's first ground of error is overruled.

■ Appellant next contends that the trial court erred in overruling his objections to a hypothetical question. The question of the prosecutor to the State's witness, Carlos Fonseca, went as follows: "If somebody came in here and were to say that when they got to the store you were already there and you were standing by the telephone would that be true or not?"

The objection by defense counsel was "Your Honor, we object to this. Some information, statement we don't know anything about, just asking him a hypothetical and we object to it." Appellant's only argument under this point is "that said questions were in the nature of hypothetical questions and should not have been allowed in evidence."

We hold that this objection is too general and does not merit consideration. *Canada v. State*, 589 S.W.2d 452, 454 (Tex.Crim. App.1979).

In his next five grounds of error appellant urges that the evidence to corroborate the testimony of the accomplice witness, Carlos Fonseca, is not sufficient to sustain the jury's verdict.

Carlos Fonseca, called as a witness by the State, testified to an incredible sequence of events that lead to the indictment and conviction of appellant for the death of Siegfried "Siggy" Davila. At the time of the offense Fonseca was a juvenile. He was charged with the murder of Davila and entered a plea of guilty.

Fonseca related that on the night of October 31, 1979, he encountered the appellant, the deceased, and Joe Martinez at the Mr. M Store on Pearsall Road. Fonseca also stated that the deceased, the appellant and Martinez were drinking Schlitz Malt Liquor when he arrived. The deceased and Fonseca had been acquainted for approximately a year prior to the incident. Fonseca also stated that the original group was joined by an individual named Rudy Aguilera and that they remained at the location drinking from approximately 9:00 or 9:30 p.m. until approximately 10:00 or 10:30 p.m.

After an hour of drinking, the five individuals left the Mr. M Store and proceeded to a vacant lot adjacent to the store in order to build a fire and continue the evening's entertainment. At this point the appellant and the deceased became embroiled in a fist fight. The record fails to reveal any motivation for the initiation of this encounter. The fist fight between the appellant and the deceased soon escalated. Joe Martinez and Rudy Aguilera took it upon themselves to join the fray and begin kicking the deceased while he lay on the ground. This portion of the incident continued for fifteen or twenty minutes, after which the appellant, Fonseca, Martinez, and Aguilera decided to leave the scene.

The four assailants decided to return to where they had beaten Davila in order to take him home. The mission was short-lived however, because Davila was unable to walk under his own power. At this point in time the four assailants decided that Davila should be killed in order to ensure that he did not seek some token of revenge.

Fonseca stated, that at this point, the appellant gave him a knife and told him to stab Davila as he lay on the ground. While Fonseca was stabbing the deceased, Martinez was using a large piece of concrete to hit Davila about the head. When Fonseca was finished with the knife he returned it

to the appellant who used it in order to personally inflict further stab wounds. Not satisfied with the wounds which had already been inflicted, Martinez, Aguilera, Fonseca and the appellant dragged Davila down a gravel path to a tree. At this juncture the four attempted to hang Davila from the tree using his belt and jacket. This effort failed, and another method was utilized. Martinez and Fonseca returned to the Mr. M Store and cut a piece of telephone wire, which was later employed to hang Davila by the neck from a mesquite tree.

Apparently, the four were still not sure that they had inflicted mortal wounds. In order to ensure that Davila was indeed dead they began using tree limbs in order to beat him about the head and chest area as he hung suspended from the mesquite tree. Prior to leaving the scene, Martinez, Aguilera, Fonseca and the appellant inflicted two more wounds upon Davila; both of which appear to have been inflicted solely to desecrate Davila's corpse. First they used a cigarette lighter to burn off the deceased's hair; then they forced a tree limb up the rectum of the deceased. The four assailants then left the scene and went to the home of Joe Martinez. The next day Fonseca was arrested by the police.

To corroborate the testimony of the accomplice Fonseca, the State offered the following:

Mrs. Hildegard Wormley, the mother of the deceased testified that she last saw her son, Siegfried Davila, on October 31, 1979, at 9:30 or 9:45 p.m. Siegfried Davila was in the company of two of his assailants, Joe Martinez, and the appellant. The deceased stated that he and his friends were going to the Mr. M Store to drink a few beers.

Mrs. Maria Jesus Mata, mother of the appellant, testified that on November 1, 1979, at about 3:30 o'clock in the afternoon police officers Robert Flemming and Vernon Sowell came to her house and asked her some questions. She gave the police

officers the pants and shirt that her son was wearing the night before.

Vernon Sowell, a homicide detective investigator with the San Antonio Police Department, testified that on November 1, 1979, he went to the home of the appellant and talked with Mrs. Mata, the mother of the appellant. She gave him the pants and shirt that the appellant wore the night before. While he was talking to Mrs. Mata a subject came walking down the street who she pointed to and said that was her son David. Appellant told officer Sowell that he had no knowledge of the death of Siggy, that he had seen him, but that had been the previous night and he had left him earlier. Appellant had scratches on his arm and explained that they had happened in school. In response to a request by officer Sowell appellant gave the officer a pair of pants and a shirt that he claimed to have been wearing the night before. They were fresh, folded neatly, had no odor to them at all as if they had been recently washed. These were not the clothes that had been identified by his mother as having been worn by the appellant the night before.

Jane Nellis, a criminal serologist for the San Antonio Police Department, testified that she tested the blood stains from the clothes that Mrs. Mata identified as having been worn by the appellant on the night of October 31, 1979, and blood from the deceased and found that they were both ABO type A blood.

The trial court instructed the jury that the witness, Carlos Fonseca was an accomplice witness as a matter of law and fully instructed them as to the corroboration necessary to convict under the provisions of TEX.CODE CRIM.PROC.ANN. art. 38.-14 (Vernon 1979), which reads:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

The test of whether the corroboration is sufficient is to eliminate from consideration the evidence of the accomplice witness and then examine the other evidence to determine if it is of an incriminating character tending to link the accused to the commission of the offense. *Passmore v. State*, 617 S.W.2d 682, 684 (Tex.Crim.App.1981); *Dalrymple v. State*, 366 S.W.2d 576, 577 (Tex.Crim.App.1963). If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Pinson v. State*, 598 S.W.2d 299, 302 (Tex.Crim. App.1980). The corroboration need only make the accomplice's testimony more likely than not. *Brown v. State*, 561 S.W.2d 484, 487 (Tex.Crim.App.1978).

Viewing the evidence in the light most favorable to the jury's verdict as this Court is required to do, and under the applicable rules, we would conclude that the evidence, independent of the accomplice witness, tends to connect the appellant with the offense charged and is sufficient to corroborate the accomplice witness' testimony.

In his final ground of error, appellant contends that there exists a fundamental error in the court's charge. He argues that it is fundamental error to indict the appellant for "intentionally *and* knowingly cause the death of an individual ..." and to charge the jury with "intentionally *or* knowingly cause the death of an individual." Appellant did not object to the court's charge.

It is not error to plead in the conjunctive and to charge in the disjunctive. In *Hammett v. State*, 578 S.W.2d 699, 713 (Tex.Crim.App.1979, En Banc) the court rejected a similar contention in a conviction for capital murder.

Appellant's final ground of error is overruled.

The judgment is affirmed.

TRUMAN E. ROBERTS, Assigned Justice, dissents.