**FEDERAL DEPOSIT INSURANCE CORP., In Its Capacity as Receiver of Texas Bank & Trust Co., Lubbock, Texas, and Federal Deposit Insurance Corp., Plaintiff–Appellants,**

v.

**REPUBLICBANK, LUBBOCK, N.A., LUBBOCK, TEXAS, Defendant–Appellee.**

No. 88–1636.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1989.
Rehearing and Rehearing En Banc Denied Nov. 7, 1989.

T. Ray Guy, Jenkens & Gilchrist, Dallas, Tex., Gregory E. Gore, Ann S. DuRoss, FDIC, Washington, D.C., for plaintiff-appellants.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, Lubbock, Tex., for defendant-appellee.

Before GARZA, REAVLEY and POLITZ, Circuit Judges.

REAVLEY, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC), successor to insolvent Texas Bank and Trust Company (Texas Bank), holds a note secured by a lien on the building which had been occupied by Texas Bank. By this action FDIC seeks to prime a superior lien owned by RepublicBank on the ground that the latter's lien was a "secret agreement" within 12 U.S.C. § 1823(e). The district court rendered judgment for RepublicBank and we affirm.

## I.

In 1983 Texas Bank decided to improve its building facility. To obtain $5,000,000 for the new construction from RepublicBank, Texas Bank sold the land where its existing building stood and discharged a prior mortgage. The purchaser of the land was One Texas Plaza, Ltd. (One Texas). One Texas then obtained the construction loan from RepublicBank. On July 6 all parties gathered for the closing, and the following instruments were executed.

1. Deed from Texas Bank to One Texas conveying the realty and retaining vendor's lien.
2. Note by One Texas to Texas Bank in the amount of $1,235,000 as part of the consideration for the conveyance.
3. Deed of trust by One Texas to Texas Bank to further secure the $1,235,000 note.
4. Note by One Texas to RepublicBank in the amount of $5,000,000.
5. Deed of trust by One Texas to RepublicBank securing the $5,000,000 note and stating the priority of the security interest to the liens of Texas Bank.
6. Subordination agreement by Texas Bank acknowledging the superiority of the RepublicBank lien to the vendor's lien and deed of trust lien of Texas Bank.

The following day these instruments, except for the notes, were all delivered in one package to the County Clerk of Lubbock County. The stamp of the clerk on items 1 and 3 (above), constituting the lien of Texas Bank, displays 2:32 p.m. for the clerk's receipt, while the clerk's stamp on the subordination agreement and RepublicBank's deed of trust displays 2:33 p.m.

Texas Bank was declared insolvent in September of 1986. The FDIC, in its corporate capacity, became the holder of the $1,235,000 note and the security interest. In November of 1986 this suit was commenced and the realty brought $4,106,318 at foreclosure sale. FDIC's chances of collecting on its note depend upon its changing priorities with RepublicBank.

## II.

FDIC contends that it enjoys priority, if the subordination agreement is disregarded, because of the fact that its deed of trust was stamped one minute prior to that of RepublicBank. We do not accept that contention, because the instruments were all delivered to the clerk, and received by the clerk in his official capacity, at the same time. *See* 64 Tex.Jur.3d *Records and*

*Recording Laws* § 60 (1989). In any event, under Texas law the priority of the RepublicBank lien is clear. All of these instruments are construed together as part of one transaction. *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979); *Richland Plantation Co. v. Justiss–Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982). The priority of the RepublicBank lien is stated in its deed of trust as well as in Texas Bank's subordination agreement.

### III.

▪ The linchpin of FDIC's position is the applicability to the subordination agreement of 12 U.S.C. § 1823(e),[1] which expanded and codified the rule of *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). It is established here that at the time of the appointment of FDIC as receiver for Texas Bank, the subordination agreement was not among the bank's records. Nor did the records of the bank's board or loan committee reflect the approval of the subordination agreement. The question, then, is whether the subordination agreement is an "agreement" invalidated by the statute. FDIC says it is because it was not reflected in the books and records of the failed bank, and "[t]he subordination agreement clearly is an agreement which affects 'tends to diminish or defeat the right, title or interest' of the FDIC in the One Texas asset."

The difficulty FDIC overlooks is that the Texas Bank lien was at all times subordinate to the RepublicBank lien. Texas Bank had no "right, title or interest" diminished or defeated by a collateral agreement, because its only interest was a junior lien. Similarly, the Supreme Court in *Langley v. Federal Deposit Insurance Corp.,* 484 U.S. 86, 108 S.Ct. 396, 402, 98

L.Ed.2d 340 (1987), distinguished between defenses of fraud in the inducement and fraud in the factum. If the latter, which would render the instrument entirely void, there would be "no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].'" *Id.*

There was no scheme or arrangement here to which RepublicBank lent itself that was likely to mislead the banking authority, as in *D'Oench, Duhme.* Nor does the statute apply. The district court's judgment was correct.

AFFIRMED.

---

1. Title 12 U.S.C. § 1823(e) provides in full:
   No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.