Anita Sue WOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 54938.

Court of Criminal Appeals of Texas,
Panel No. 2.

Nov. 22, 1978.

Rehearing En Banc. Denied
March 7, 1979.

Jack W. Frieze, Irving, for appellant.

Henry M. Wade, Dist. Atty., John Tatum, Andy Anderson, and Mike Gillett, Asst. Dist. Attys., Dallas, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for making a false report to a police officer. V.T.C.A. Penal Code, Sec. 37.08. Trial was to the court. Punishment was assessed at 180 days, probated, and a fine of $200.

Appellant contends that the evidence is insufficient to support the conviction and challenges the statute upon which the conviction is based on various constitutional grounds. The challenge to the sufficiency of the evidence necessarily requires a detailed review of the evidence.

On August 15, 1975, the appellant, Anita Sue Wood, made a complaint to the Irving Police Department accusing Officer George Wolf of being intoxicated while on duty. The complaint, originally made to Captain Lowe, was referred to Lieutenant Glen Mariner who immediately investigated by contacting Officer Wolf. He determined that Wolf had not been drinking nor showed any signs of intoxication. The appellant, when confronted with Mariner's findings and told that no further action would be taken without a written statement, made the statement set out below.

"VOLUNTARY STATEMENT. Not under Arrest.

City of Irving
Police Department

Before me, the undersigned authority, on this the 15th day of AUGUST A.D. 1975 personally appeared ANITA SUE WOOD, W/F/23, Address 810 Cherrywood Ct Irving, Texas Age 23, Phone No. 254–8550.

Deposes and says: About 4:20 PM on Friday, 8/15/75, I parked outside the Irving Bank & Trust on Main Street. I was parked next to a fire zone. I was in the bank for about 5 minutes and when I came out, the officer was writing a ticker [sic] for my car. I asked him if this was a ticket for my car and he said yes. I was standing there talking to the officer and I could smell liquor on his breath. I was about five (5) feet from him and could smell it strongly. I was upset when I left but I told him that I did not intend to pay the ticket. He just looked at me and I went on and left. Later I contacted Captain Lowe of the Irving Police Department and told him what had happened and that Officer Bill Wolf had been drinking and was in uniform and was intoxicated. Later I was contacted by Lieutenant Mariner on the phone, where I told him what had happened. I came to the Irving Police station, where I freeely [sic] gave the above information to Lieutenant Mariner. This statement is true and correct to the best of my knowledge.

/s/ Anita Wood

witt: /s/ Rachel Castro 8/15/75

Subscribed and sworn to before me on this the 15th day of August A.D. 1975

[Seal on original]     /s/ G. B. Mariner
                        Notary Public, Dallas County, Texas"

The appellant's testimony mirrored the facts set out in her statement. Her testimony also showed that her assessment of Wolf's intoxication was based solely on the smell of alcohol on his breath, not on any physical signs of intoxication.

Officer Wolf's account of the transaction regarding the traffic citation confirmed the appellant's testimony in all but two areas. Wolf stated that the appellant was parked in a fire lane and denied the allegation that he had been drinking that afternoon. Wolf added that at the end of this 4 or 5 minute exchange, the appellant called him a bastard. Wood's testimony also reflected that the insult had occurred.

In support of Wolf's testimony, Mariner and four other witnesses testified that Wolf had not been drinking. Each of these witnesses had observed Wolf on the afternoon in question, and each maintained that Wolf exhibited no signs of intoxication.

On cross-examination, Wolf recalled that he had applied after-shave lotion about an hour before the exchange, and that he had smoked cigarettes earlier in the day. The evidence reflected that there was a restaurant near the scene of the encounter and that exhaust fumes from heavy traffic were present.

On cross-examination of the appellant, the State established that her brothers "had a lot of contact with," "had been handled by," and "were no strangers to" the Irving Police Department. The appellant denied, however, that she harbored any ill feelings toward the Irving Police Department.

We find the evidence insufficient to support a conviction, thus it is unnecessary to reach appellant's claim that the statute is unconstitutional. In considering the sufficiency of the evidence, we are, however,

confronted with questions of constitutional dimension.

▬▬ The appellant urges that her conviction was in violation of Article I, Sec. 8, and Article I, Sec. 27, of the Texas Constitution and the First Amendment of the United States Constitution.[1] Appellant contends that any act seeking redress or involving free speech would be privileged from prosecution. As set out in this opinion, all such acts are not privileged, but instead must depend on the surrounding circumstances to bring them within the privilege. The conduct prohibited by V.T.C.A. Penal Code, Section 37.08(a)(1), and the freedoms guaranteed by these constitutional provisions must be reconciled.

Article I, Sec. 27, of the Texas Constitution provides that:

"RIGHT OF ASSEMBLY; PETITION FOR REDRESS OF GRIEVANCES. The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

Applying this provision in a civil libel case, the Court in *Connellee v. Blanton*, 163 S.W. 404, 406 (Tex.Civ.App., Ft. Worth, 1913, no writ), held that "[e]very communication is privileged which is made in good faith with a view to obtain redress for some injury received or to prevent some public abuse." The appellant's actions were an attempt to obtain redress for what she arguably perceived as official misconduct, thus the State must prove that her allegations were in bad faith and for reasons other than to obtain action on a valid grievance.

▬▬ The appellant was convicted under V.T.C.A. Penal Code, Sec. 37.08(a)(1), which provides that:

"(a) A person commits an offense if he:

"(1) reports to a peace officer an offense or incident within the officer's concern, knowing that the offense or incident did not occur;

. . . ."

The culpable mental state required by this statute, *knowing*, is defined in V.T.C.A. Penal Code, Sec. 6.03(b), as:

"(b) A person acts knowingly, or with knowledge with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

Thus, the mental state requisite to convict under Sec. 37.08(a)(1) would normally require a showing that the defendant was aware that the circumstances surrounding

---

1. Appellant's contention that her right to free speech was violated is founded on both Tex. Const. Art. I, Sec. 8,

"FREEDOM OF SPEECH AND PRESS; LIBEL. Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases."

and U.S.Const. Amend. I:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The rights guaranteed by these provisions are delineated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In *Sullivan, supra*, the Supreme Court held that liability for criticism of a public official could be imposed only for a false statement made with malice. The Supreme Court later made the holding in *Sullivan* applicable to criminal prosecutions as well. *Garrison v. Louisiana*, 379 U.S. 64, 67, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). It is not necessary for the Court to reach this contention, however, as Tex.Const. Art. I, Sec. 27, is dispositive on the constitutional issues.

her conduct existed. In most cases, the State relies on circumstantial evidence to prove the required culpable mental state. Thus, the culpable mental state required by statute could be shown by an inference arising from the proof of the actual state of the facts coupled with the defendant's opportunity to perceive them.

A greater showing is necessary to prove the bad faith required in this case. Under *Connellee v. Blanton*, supra, the State must go further and prove that appellant's representations were in bad faith and for reasons other than to obtain action on a valid grievance. The State must introduce evidence showing that the appellant *did actually* perceive the facts as they existed in addition to evidence proving the state of the facts and showing her opportunity to perceive them. Viewing the evidence in the light most favorable to the conviction, the evidence shows that Wolf was not intoxicated and that appellant had ample opportunity to perceive this. The State's evidence that appellant knew that Wolf was not intoxicated is, however, insufficient.

The State seeks to show the appellant's actual knowledge by evidence of both a motive to fabricate her allegations and the narrow factual basis for her claim. This evidence is too meager to support such an inference of actual knowledge.

To find a motive from her brothers' involvements with the Irving police would require more evidence that she harbored resentment for the police department's actions. Her reaction to being issued a citation is equivocal, insofar as it cannot be used to show that she had ill feelings toward the department because of her brothers' involvements. Her resentment at being given the ticket alone could have supplied the motivation for her actions during the incident. However, it does not follow

that a motive to falsity would stem from one such incident. Thus this evidence is insufficient to infer she actually knew the officer was not intoxicated and that she acted in bad faith.

Her conclusion that the officer was intoxicated based solely on the odor of alcohol on his breath does not give rise to the inference that she knew that he was not intoxicated.

The evidence of her motive or narrow factual basis for her conclusion infers no more than a suspicion. In no way has every other reasonable hypothesis been excluded. We conclude that the circumstantial evidence in this case is insufficient to support the conviction.[2]

Having found that reversal must result, as the evidence is insufficient, the Supreme Court's decisions in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (June 14, 1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (June 14, 1978), dictate that no further prosecution be had in this case.

The judgment is reversed and reformed to show acquittal.

Before the Court en banc.

## DISSENTING OPINION ON STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

DOUGLAS, Judge.

The majority overrules the State's motion for leave to file motion for rehearing without written opinion. On original submission a panel of this Court held that in order to secure a conviction for making a false report to a police officer the State must prove that the defendant acted in "bad faith." The panel further held that the

---

2. This Court holds only that the evidence was insufficient and does not pass on the constitutionality of the statute. Nor does this Court hold that every prosecution under this statute must meet the standard of proof set out above. In *Norton v. State*, 564 S.W.2d 714 (Tex.Cr. App.1978), this Court was presented with an appeal from a conviction under Sec. 37.08, supra. The facts showed that the defendant had

procured marihuana, secreted it in his ex-wife's car, and then informed the police that his ex-wife was selling narcotics out of her car. He raised no constitutional claims, nor did the facts indicate any were present. The defendant's actions in *Norton*, in contrast to the appellant's actions in the present case, did not entitle the defendant to the constitutional protection present in this case.

State's proof of "bad faith" was circumstantial, that the proof did not negate every reasonable hypothesis except guilt and, therefore, the evidence was insufficient and a judgment of acquittal was necessary. The panel was incorrect in adding an additional element to the statute. It substituted an old Court of Civil Appeals opinion in a libel case based on common law as a constitutional provision. The Legislature is not bound to follow the decision based on common law of a libel case in enacting a statute making it an offense to make a false report to an officer knowing that the offense or event did not occur.

The panel ignored a long line of cases when it reviewed the evidence of "bad faith" under our rules governing circumstantial evidence and the panel ignored facts in concluding the evidence was insufficient even under the improper standard it applied.

Section 37.08 of the Penal Code defines the offense of False Report to Peace Officer. The statutory elements of the offense are:

1. A person;
2. Makes a report;
3. To a peace officer;
4. Of or relating to an offense or incident within the officer's concern;
5. Knowing the offense or incident did not occur.

The panel, in a case where the subject of the false report is a police officer, adds the additional element of:

6. In bad faith.

It is the function of the Legislature to pass laws; it is the judiciary's function to interpret them. This Court should not seek to usurp the powers of the Legislature. Given the separation of our government into three branches, the need for an explanation is necessary when the judiciary modifies a legislative act. The panel opinion in the instant case fails to present a proper explanation.

The panel opinion quotes from our Constitution that citizens shall have the right to apply to those invested with powers of government for redress of grievances or other purposes. It substitutes a citation to *Connellee v. Blanton,* 163 S.W. 404 (Tex.Civ. App., Ft. Worth, 1913, no writ), for any meaningful analysis.

C. U. Connellee appealed from a judgment in a libel suit. He prepared an application to Governor O. B. Colquitt requesting a pardon for George Parvin who had been convicted of aggravated assault. In the application, Connellee charged that Judge Thomas Blanton, who presided at Parvin's trial, had "changed the venue of the case for the purpose of making cost excessive." Blanton's suit charged this statement was libelous and obtained a judgment of $3,000. The trial judge also concluded Connellee wrote the statement "with actual malice." The *Connellee* opinion begins with a recitation of the facts. It then disposes of an unrelated contention. Finally, it deals with Connellee's argument that his general demurrer was improperly overruled because statements in an application for a pardon are subject to an absolute privilege. While discussing the difference between an absolute and qualified privilege, the court quotes from *Defamation, Slander and Libel,* a book by "Mr. Newell." The quotation includes the following:

"Every communication is privileged which is made in good faith with a view to obtain redress for some injury received or to prevent or punish some abuse."

The *Connellee* court then discussed Texas precedent and the relevant constitutional provisions and rejected "Mr. Newell's" concept of a qualified privilege. The *Connellee* court held: "[T]he application made by appellant to the Governor, who was, by the Constitution, vested with authority to grant a pardon to George Parvin, was absolutely privileged." This holding of absolute privilege was essential to the case because if the privilege was only qualified, the trial court's finding of "actual malice" would have defeated Connellee's contention.

Thus, the panel judicially amended a statute without explaining its rationale. In the place of a thorough explanation and analysis, they substituted conclusory statements

and citation to a 65-year-old, intermediate appellate court decision. The panel misconstrued the opinion of the Court of Civil Appeals.

The writer is of the opinion that the evidence is sufficient to support the conviction even with the element of the offense added by the panel. Normally, when we review the sufficiency of the evidence, we look at that evidence in the light most favorable to the verdict and determine if an appellant was guilty beyond a reasonable doubt. In a circumstantial case we review the evidence, again in the light most favorable to the verdict, and determine if that evidence, in addition to proving guilt beyond a reasonable doubt, negates every reasonable hypothesis except guilt. This second standard is considered more exacting.

The panel opinion reviewed the evidence of "bad faith" under this more exacting circumstantial evidence standard. This is contrary to established precedent. In *Williams v. State*, 567 S.W.2d 507 (Tex.Cr.App. 1978), we stated the applicable rule:

"It is well established that an instruction as to circumstantial evidence is not required where the main fact is proved by direct testimony and only the question of the defendant's intent is to be inferred from the circumstances. *Littleton v. State*, Tex.Cr.App., 419 S.W.2d 355; *Helms v. State*, Tex.Cr.App., 493 S.W.2d 227; *Chappell v. State*, Tex.Cr.App. 519 S.W.2d 453; *Ross v. State*, Tex.Cr.App., 504 S.W.2d 862."

In the instant case, the statutory or the first four elements of the offense were established by appellant's written complaint and the testimony of officers who had personal knowledge of either appellant's complaint or Officer Wolf's lack of intoxication. These were facts proved by direct evidence. Appellant's state of mind with respect to the culpable mental state of intentionally and knowingly as alleged in the indictment was proved and the element of "bad faith" was proved by inferences which could be drawn from these objective facts. In nearly every case, state of mind is proved by

such inferences. Yet, this Court has never applied the law of circumstantial evidence to such a case. Where intent is the only thing that is not proved by direct evidence, the case is not a circumstantial evidence case and no such charge is required. *Smith v. State*, 470 S.W.2d 696 (Tex.Cr.App.1971); *Barber v. State*, 462 S.W.2d 33 (Tex.Cr.App. 1971).

Finally, this writer disagrees with the panel's conclusion that the evidence to prove their judicially enacted "bad faith" element does not exclude every reasonable hypothesis except guilt. The panel decision acknowledges that the evidence "shows that Wolf was not intoxicated and that appellant had ample opportunity to perceive this." The panel apparently would require direct evidence of malicious motive. Her false report and her brothers' involvement with the Irving police do not satisfy the panel nor does the fact that she was issued a traffic ticket, to which the panel contends her reaction was "equivocal," prove sufficient proof of motive.

The record indicates the profane response of appellant when she was issued the parking ticket. Officer Wolf described the incident as follows:

"A. After I had asked her for her name, address, telephone number and date of birth, I gave her the pink copy of the citation. She walked to her car, and as she sat down in her car she called me a bastard.

"Q. Okay, what happened then?

"A. I walked over to her car and I said, Ma'am, I said, I'm not a bastard.

"Q. And then what happened?

"A. She stepped on the gas, her car lurched forward and the right front wheel went up over the curb.

"Q. Then what happened?

"A. She said something and I said, Ma'am. She backed up and said something else and I said, Ma'am. I don't know what she said, I couldn't hear her. And then she drove off."

Reacting to a ticket by calling an officer a bastard and her conduct at the time is some evidence of motive.

Appellant's brothers had been involved with the Irving police. Appellant over-reacted to the issuance of a parking ticket and she intentionally and knowingly made a patently false report of intoxication to Wolf's supervisors. Even under the panel's erroneous legal analysis, this writer can perceive of no reasonable probability to explain the making of the false report other than that of the appellant's actual malice or "bad faith" toward Wolf. The evidence was sufficient.

The motion for rehearing should be granted and the judgment should be affirmed.

W. C. DAVIS, J., joins in this dissent.