Billie Gene McGEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 1060–83.

Court of Criminal Appeals of Texas, En Banc.

June 27, 1984.

Stephen Chapman, Plano, for appellant.

Henry Wade, Dist. Atty. and Gilbert P. Howard, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Trial was before the court upon appellant's plea of not guilty of false report to a peace officer. V.T.C.A. Penal Code, Sec. 37.08(a)(1).[1] After finding appellant guilty, the court assessed punishment at ten days probated. The conviction was affirmed by the Court of Appeals for the Second Su-

preme Judicial District (Fort Worth) in an unpublished opinion. We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the evidence was sufficient under the standards enunciated in *Wood v. State*, 577 S.W.2d 477 (Tex.Cr.App.1979).

Appellant was convicted of reporting to Dallas Police Officer R.D. Browning an incident, namely an assault, within Browning's concern, knowing the incident never occurred.

Appellant signed a sworn affidavit accusing Officer Kenneth Pesce of police brutality arising out of an arrest of appellant on charges of driving while intoxicated.

On the evening of February 19, 1981, Pesce was directing traffic at the scene of a recent automobile accident on Greenville Avenue in Dallas. Officer Russell Marston was present and investigating the accident.

Pesce testified that appellant's van screeched to a halt at the point where Pesce was directing traffic. Pesce motioned for appellant to move along but he did not respond. The officer shined a flashlight in appellant's eyes and noticed that appellant was slumped over his steering wheel.

Pesce further testified that he opened the van door and smelled the strong odor of alcohol. He handcuffed appellant and arrested him for driving while intoxicated.

Pesce drove appellant to the police station. Once at the station, Pesce asked appellant to step out of the car. Appellant mumbled something but did not move. Pesce lifted appellant's feet from the car and placed them on the pavement.

Pesce again asked appellant to get out of the vehicle and appellant requested assistance. When Pesce reached into the car appellant fell backward, pulling Pesce with him. Pesce testified that in trying to extricate himself from appellant's grasp he in-

---

**1.** Sec. 37.08(a)(1), supra, states:
   "(a) A person commits an offense if he:
     "(1) reports to a peace officer an offense or incident within the officer's concern, knowing

that the offense or incident did not occur;
..."

advertently hit appellant in the forehead with his clipboard.

Pesce ran to get other officers for assistance in subduing appellant. Three officers, including B.J. McDonald, came out to help. As the officers arrived to assist Pesce, appellant was walking toward the back of the police car. According to Pesce, McDonald put a choke-hold on appellant.

Appellant was subdued and taken into the station. Pesce testified, and appellant denied, that appellant received medical attention for a cut to the forehead.

Appellant's father, Robert McGee, went to the police station on the 20th to get appellant out of jail. He testified to observing a large knot or bruise on appellant's forehead. He asked the appellant what happened and appellant related that the officer who arrested him had engaged in police brutality. Robert McGee suggested that appellant file a formal complaint.

Appellant and his father filed a complaint with Officers Ane Casady and R.D. Browning of the Internal Affairs Division, accusing Pesce of police brutality. In his sworn affidavit, appellant accused Pesce of: pushing him against a police car; hitting him in the stomach and chest four or five times; hitting him in the forehead with a flashlight; and choking him. According to the affidavit, all of these activities occurred at the scene of the traffic accident.

Appellant testified that the final typed affidavit which he signed was not as complete as his original written statement and that Browning forced him to make some changes.

Browning admitted to scratching out some of the words in appellant's original written complaint and that not all the handwritten material used as the basis for the final typed affidavit was written by appellant.

Appellant and his father testified that when they went to file the complaint the officers on duty told them appellant would have to remove his shirt so that pictures could be taken, but when appellant did so, revealing bruises, no such pictures were taken.

Officer Marston testified that, as far as he could see, no altercation between appellant and Pesce occurred at the scene of the accident. Appellant's arrest appeared to be routine. Marston did not accompany Pesce and appellant to the police station.

After appellant was released from police custody he went to see Dr. Scott King Ross. Ross testified that appellant complained of head injuries and had suffered abrasions and contusions to the forehead. Appellant told Ross he had been hit on the head by a flashlight. According to Ross, who was at the time of trial a team physician for the Dallas Black Hawks hockey club, it was unlikely that the knot on appellant's forehead could have been caused by the metal clip on a clipboard. Rather, the bruise was more likely to have been caused by a blunt instrument such as a flashlight.

Appellant testified that he was abused by Officer Pesce both at the arrest scene and at the station house though his affidavit spoke only of Pesce's conduct at the arrest scene.

Appellant stated that when he signed the affidavit he had been up for thirty-five straight hours, and had been affected by the blow to his head. He testified that things happened so quickly he could not be sure what happened at the scene and what happened at the station.

· Nevertheless a reading of appellant's testimony reflects that he believed Pesce hit him with a flashlight at the arrest scene and choked him at the police station. Appellant testified that Pesce was unnecessarily rough with him at both locations and that Pesce shoved him against the police car at both locations, injuring his back and ribs. Appellant testified that there was at least one other officer present at the station and possibly more but he was firm in his conviction that Pesce choked him.

In the case of *Wood v. State*, supra, the defendant was charged and convicted under Sec. 37.08(a)(1), supra, after she accused an officer in the Irving Police De-

partment of being intoxicated on the job. The officer had given the defendant a traffic ticket shortly before she reported him. The defendant admitted that her brothers "were no strangers" to the Irving Police Department.

In reversing the defendant's conviction, we noted that there are special problems associated with a prosecution arising out of Sec. 37.08(a)(1), supra, when the basis of the prosecution is an allegedly false claim of police misconduct reported by the defendant. In such a situation the statute must be reconciled with the rights of assembly, petition, and redress of grievances enunciated in Art. 1, Sec. 27, of the Texas Constitution.

▉ In prosecutions under Sec. 37.08, supra, that do not involve reports of official misconduct, to prove that the defendant *knew* the offense or incident reported did not occur, it would normally be sufficient to show that the defendant was aware that the circumstances surrounding his conduct existed.[2] The culpable mental state could be shown by an inference arising from the proof of the actual state of the facts coupled with the defendant's opportunity to perceive them. See *Wood v. State,* supra, at 479–480.

▉ A greater showing is required in the *Wood* type of case. The State must prove that a defendant's representations were in bad faith and for reasons other than to obtain action on a valid grievance. The State must introduce evidence showing that a defendant *did actually perceive* the facts as they existed in addition to evidence proving the state of the facts and showing his opportunity to perceive them. *Wood v. State,* supra at 480.

The Court of Appeals acknowledged that the instant case must be decided under the rules established in *Wood.* Nevertheless, the Court of Appeals found the evidence sufficient and distinguished the case from *Wood* factually on the following three

grounds: (1) appellant's testimony at trial differed with his affidavit; (2) witnesses refuted all allegations made by appellant; (3) appellant himself was inconsistent in his testimony.

▉ Major discrepancies between trial testimony and a defendant's sworn affidavit can be significant in a given case under Sec. 37.08(a)(1), supra. In the instant case, however, the only important discrepancy between appellant's affidavit and his testimony concerned the scene of the alleged police brutality. We do not believe a discrepancy of this sort can give rise to an inference that appellant knew he was mistaken when he reported that Officer Pesce hit him.

The notion that the witnesses refuted all of appellant's allegations is not supported by the record. Appellant's story was partially supported by Pesce who testified that he did hit the appellant (though not intentionally and not with a flashlight) and that an officer (though not Pesce) put a chokehold on appellant. Pesce and Marston were the only State witnesses to events at the scene of arrest and the stationhouse. Parts of appellant's testimony were corroborated by his father and Dr. Ross, who witnessed the bruises on his head. Even if all State witnesses did refute appellant's story, we note that all of the witnesses in *Wood* refuted the defendant's report that the officer in question was intoxicated.

We disagree with the characterization of appellant's testimony as inherently inconsistent. Appellant repeatedly stated that he could not be sure of all of the details surrounding the events in question. He consistently maintained, however, that Pesce and Pesce alone choked him and hit him with a flashlight, and abused him both at the scene of the arrest and the police station.

Actually the evidence in support of appellant's report to the police was far stronger than that involved in *Wood.* It is beyond question that appellant received bruises to

---

**2.** See for example *Norton v. State,* 564 S.W.2d 714 (Tex.Cr.App.1978), where the facts showed that the defendant had procured marihuana, secreted it in his ex-wife's car, and then in-

formed the police that his ex-wife was selling narcotics out of her car. In *Norton,* no constitutional claims were raised by the defendant or presented from the facts.

his head, was choked by an officer, and was hit in the head by something. Medical evidence supported appellant's claim of being hit by a flashlight. The evidence of appellant's good faith perception of what occurred to him was also stronger than that involved in *Wood* where the trier of fact had only the unsupported testimony of the defendant to rely on.

In *Wood* we found the defendant's motive to fabricate and the narrow factual basis for her claim too meager to support an inference of actual knowledge on her part of the falsity of her report. Here, though there was an arguable motive to fabricate, the factual basis for the appellant's claim was, as we have seen, stronger than that set out in *Wood.*

In short, the evidence presented by the State was insufficient to support appellant's conviction under the rigorous standards demanded by *Wood* and the Texas Constitution.

In accordance with the decisions of the United States Supreme Court in *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), and *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 1241, 57 L.Ed.2d 1 (1978), the judgments of the Court of Appeals and the trial court are reversed and the appellant is acquitted.

