Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★       ★ ★ ★

# MEMORANDUM OPINION

Nos. 04-08-00056-CR & 04-08-00062-CR

Yolanda **OLIVARRI**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 2, Guadalupe County, Texas
Trial Court Nos. CCL-06-02050 & CCL-06-2049
Honorable Frank Follis, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  November 26, 2008

AFFIRMED

Yolanda Olivarri was convicted by a jury of false report to a police officer and perjury.  On appeal, Olivarri challenges the legal and factual sufficiency of the evidence to support her convictions.  Olivarri also asserts that the trial court erred in admitting into evidence her complaint form.  We affirm the trial court's judgments.

## BACKGROUND

Officer Moses Morales recorded a car speeding at 48 mph in a 35 mph zone. Before Officer Morales could initiate a stop, the driver of the car, later identified as Olivarri, stopped at the side of the road on two separate occasions to look under her car. After activating his lights and pulling in behind Olivarri's car, Officer Morales approached Olivarri, who stated that she stopped because she heard a cat under her car. Officer Morales instructed Olivarri to return to her car and produce her driver's license and insurance card. Olivarri angrily denied that she was speeding. Officer Morales returned to his vehicle to run Olivarri's license and requested back-up because his recording system was out of tape and the situation was unusual.

After Officer Brian Nipper arrived at the scene and activated his recording system, Olivarri told Officer Nipper about hearing a cat. Olivarri informed the officers that the only animal she had in her car was her dog; however, the officers did not observe a dog in the car. While searching the trunk of the car, the officers observed a dead bat in the trunk.

When Officer Morales explained to Olivarri that she needed to sign the traffic citation, Olivarri was combative and told him that all Hispanic men had a machismo attitude and that she had been sexually assaulted by a Hispanic man in the past. In an effort to resolve the situation, Officer Morales decided to permit Olivarri to see the speed recorded on the radar. Olivarri complained that she could not see the radar through the window. When she attempted to grab the door handle of Officer Morales's vehicle, Officer Morales grabbed Olivarri below her elbow, moved her hand away from the door handle, and informed her that she was not permitted inside the vehicle. Olivarri immediately claimed that Officer Morales had assaulted her. After Officer Nipper informed Olivarri that she would be arrested if she refused to sign the citation, she signed the citation. Olivarri

requested and received information from Officer Nipper regarding the procedure for filing a complaint against Officer Morales.

After leaving the scene, Olivarri called the emergency dispatcher and was informed that she would have to call the police department during normal business hours in order to file a complaint. Olivarri also later stopped Officer Nipper while he continued on patrol. Officer Nipper told Olivarri that he could not further speak with her about the matter and that she should contact the police department during normal business hours.

The following day, Olivarri was interviewed at the police department by Sergeant Thomas Curd regarding her allegation that Officer Morales had used excessive force. Olivarri told Sergeant Curd that Officer Morales shoved her causing bruises on her upper arm. Sergeant Curd took photographs of the bruises and gave Olivarri a complaint form to complete and return.

Three days later, Olivarri returned, and the completed form was notarized by a police clerk. The police clerk testified that when Olivarri turned in the form, she stated that she would be happy if she could get three to six thousand dollars for her pain and suffering. In her complaint form, Olivarri stated that Officer Nipper told her he could "see a bruise starting." Olivarri claimed that Officer Morales "push hit" her right arm. Olivarri stated that she began to cry and asked Officer Morales, "why did you push me why did you hit me." Olivarri concluded her complaint form by offering to settle "without any media or lawyers" for "6 to 8 thousand dollars."

At trial, Officer Morales testified that he grabbed Olivarri's hand or wrist to move it away from his vehicle, and his actions could not have bruised Olivarri's upper arm. Officer Nipper testified that he did not see where Officer Morales grabbed Olivarri on her arm; however, Officer Nipper denied telling Olivarri that he saw a bruise. Officer Nipper testified that Officer Morales did

not hit or push Olivarri. The entire DVD recording of the traffic stop upon Officer Nipper's arrival and a DVD focusing more directly on the manner in which Officer Morales removed Olivarri's hand from the door handle of his vehicle were introduced into evidence. A jury found Olivarri guilty of false report to a police officer and perjury, and Olivarri was placed on community supervision for twenty-four months.

## DISCUSSION

In her first three issues, Olivarri contends that the evidence is legally and factually insufficient to support her convictions. In determining the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id.* at 9.

A person commits the offense of perjury if, with intent to deceive and with knowledge of the statement's meaning, she makes a false statement under oath. TEX. PEN. CODE ANN. § 37.02(a)(1) (Vernon 2003); *see also Covalt v. State*, 877 S.W.2d 445, 447-48 (Tex. App.—Houston [1st Dist.]

1994, no writ). A person commits the offense of false report to a peace officer if, with intent to deceive, she knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer conducting the investigation. TEX. PEN. CODE ANN. § 37.08(a)(1) (Vernon 2003). When a person is reporting police misconduct, the State must prove that the person's representations were in bad faith and for reasons other than to obtain action on a valid grievance. *McGee v. State*, 671 S.W.2d 892, 895 (Tex. Crim. App. 1984). "The State must introduce evidence showing that [the] defendant *did actually perceive* the facts as they existed in addition to evidence proving the state of the facts and showing his opportunity to perceive them." *Id.*

In this case, Olivarri stated in her written, notarized complaint that Officer Morales pushed and hit her. Olivarri also stated that Officer Nipper told her he saw the bruise starting on her arm. In her interview with Sergeant Curd, Olivarri stated that Officer Morales shoved her causing the bruises to her upper arm.

Sergeant Curd testified that he was investigating both a possible administrative action and criminal charges. In addition to Officer Morales's testimony that he grabbed Olivarri's wrist or hand, the jury was shown the DVD recordings which enabled the jury to see the manner in which Officer Morales removed Olivarri's hand from his vehicle. Furthermore, pictures of the bruises Olivarri stated Officer Morales caused to her upper arm were introduced into evidence. Officer Nipper denied telling Olivarri that he saw a bruise on her arm and testified that Officer Morales did not hit or push Olivarri. Given this evidence, the jury could have found that Olivarri actually perceived the location where Officer Morales grabbed her and falsely stated that he hit and pushed her causing bodily injury or bruises to her upper arm as a result. The jury also could have found that

Olivarri was acting in bad faith and for reasons other than to obtain action on a valid grievance based on her behavior, the location of the bruises, her verbal statements to the police clerk, and her offer to settle her complaint for six to eight thousand. Having reviewed all of the evidence presented, we conclude the evidence is legally and factually sufficient to support the jury's verdicts.

The two cases cited in Olivarri's brief in which the Texas Court of Criminal Appeals found the evidence insufficient to uphold convictions for false reports of police misconduct are distinguishable from the instant case. *See McGee v. State*, 671 S.W.2d 892 (Tex. Crim. App. 1984); *Wood v. State*, 577 S.W.2d 477 (Tex. Crim. App. 1978). Unlike the corroborating evidence in *McGee*, which supported the defendant's version of the events, the corroborating evidence in this case supports the falsity of Olivarri's claims, and no similar corroborating evidence was introduced in *Wood*. *See also Frost v. State*, 2 S.W.3d 625, 630 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (questioning continued validity of analysis of circumstantial evidence in *Wood*).

The final issue presented by Olivarri is the assertion that the complaint form contained white-out on the signature line raising questions regarding the notarization process. Because no objection was made to the introduction of the complaint form at trial, Olivarri's complaint is waived. TEX. R. APP. P. 33.1. We do note, however, that the police clerk testified that she watched Olivarri sign the statement and notarized the document that was handed to her by Olivarri including the attachments that were not part of the standard form.

## CONCLUSION

The trial court's judgments are affirmed.

Rebecca Simmons, Justice

Do Not Publish