

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00422-CR

EDWIN ARNELL DENNIS                                   APPELLANT

V.

THE STATE OF TEXAS                                       STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY
## TRIAL COURT NO. CR-2012-08638-C

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Edwin Arnell Dennis of making a false report to a police officer and assessed his punishment at forty-five days in county jail, probated for twelve months. The trial court sentenced him accordingly. Appellant brings two issues, each challenging the sufficiency of the evidence to

---

[1]*See* Tex. R. App. P. 47.4.

support the jury's verdict. Because the evidence is sufficient to support the jury's verdict, we affirm the trial court's judgment.

**Brief Facts**

At some point in 2009 or 2010, Appellant had a 1997 Mercedes towed to an automotive repair shop to have repair work performed on the engine. The car belonged to his wife, Armease Dennis. Appellant could not afford to pay for having the repairs done and left the vehicle at the shop for about a year and a half. The automotive repair shop stored the car next door at Mike's Auto Body and Paint Shop. Mike Aghyarian owned the real property on which both shops were located.

In October 2011, after the automotive repair shop made two unsuccessful attempts to speak with Appellant, Mike had the vehicle towed away by Pro-Tow Wrecker Service. Pro-Tow took possession of the vehicle, and in January 2012, it auctioned the vehicle to Joe Rodriguez, the owner of an automobile recycling facility.

On March 19, 2012, Appellant filed a claim with his insurance company on a policy that he had purchased in January 2012, informed the insurance company that his 1997 Mercedes automobile had been stolen, and reported the car to be valued at $8,000. The insurance company told Appellant to contact the Lewisville Police Department and report the car stolen, which he did.

At trial, the State and Appellant offered conflicting testimony about what had happened in the interval between Pro-Tow's selling the car and Appellant's

2

arrest. Brittany Justice with Pro-Tow testified that on October 25, 2011, the day Pro-Tow towed the car, someone from Pro-Tow called the City of Lewisville to report that it had towed the car. She stated that on October 27, 2011, Pro-Tow sent a letter to Armease, the last known registered owner listed in the department of motor vehicle (DMV) records, notifying her that Pro-Tow had the car. When Pro-Tow checked the DMV records, they did not show that the car had been reported as stolen. On November 9, 2011, Pro-Tow sent a second letter to Armease by certified mail. The letter notified Armease that the car would be sold if not claimed. Pro-Tow did not hear from the owner, so the City of Lewisville sold the car at an auction on January 12, 2012.

The letters sent by Pro-Tow, however, misspelled the owner's name as either Armease Dennise or Armease Denise. Further, the DMV records listed two addresses for Armease, one on Net Leaf in Keller, Texas, and one at an address on "Mockingbird Circle." Pro-Tow sent letters to the Net Leaf address and to the correct house number on Mockingbird but mistakenly sent the Mockingbird letters to an address on "Mockingbird Court" instead of "Mockingbird Circle."

Justice further testified that after the auction, Appellant called and asked for the car back. She told him that it had been sold, and she gave him the addresses to which Pro-Tow had mailed the letters. She denied giving him any information about the buyer. Justice could not remember exactly when Appellant called, but it was sometime in February 2012.

3

Rodriguez testified that he had received the vehicle around January 13, 2012, and about a week later, a man claiming to be the owner called, asked how Rodriguez had obtained the car, and stated that it was his wife's car and that he would like to have it back. Rodriguez offered to let him have it back for $1,500 (roughly the price Rodriguez had acquired the vehicle for). Rodriguez stated that a few days later, the man called back and said that he would see what he could do to get the money to pay for the car, and Rodriguez told him that he could wait a couple of weeks but could not promise to hold onto it longer than that. Rodriguez stated that he believed that the man called one more time, but after that, he did not hear back from the man. After a few more weeks, Rodriguez began selling off the vehicle's parts.

Rodriguez stated that he surrendered the title to the State on March 2, 2012, and in August 2012, the police came to ask about the car. The police told him that the car had been reported stolen, and he replied that the owner knew where the car was because Rodriguez had spoken with him.

Barry Beasley, a detention officer with the Lewisville Police Department, testified that on March 19, 2012, Appellant came to the station and filled out a statement that the car had been stolen. In the report, Appellant wrote, "At about 8:30 AM on 3/19/2012, my wife['s] vehicle was not in driveway. I called my insurance 21st Century Insurance[;] they told me to file an incident report. The color of the vehicle is silver. I do not know[] any parties—suspect."

Detective Scott Kelly from the Lewisville Police Department testified that after the car was reported as stolen, the department received a letter from the DMV stating that a salvaged title had been turned in for the car but that it was still listed as stolen. Detective Kelly called Appellant at the phone number listed on his statement but was not able to speak to him. Detective Kelly then went to the salvage yard and spoke with Rodriguez. After talking to Rodriguez, Detective Kelly went to Pro-Tow and talked to Justice. He then checked an insurance claims database and found that on January 29, 2012, after Rodriguez had bought the car at auction, Appellant had taken out an insurance policy on the car. Based on Detective Kelly's investigation, the Lewisville police obtained an arrest warrant for Appellant.

Appellant and Armease both testified. Armease testified that of the two addresses to which Pro-Tow sent notices, they were no longer living at the Net Leaf address at the time that the letters were sent, and they had never lived at an address on Mockingbird Court. She stated that they had never received any of the notices that Pro-Tow had sent. She further testified that they did not find out that the car had been towed until after Appellant had reported it stolen, and when Appellant filed the report, they did not know where the car was.

Appellant testified that when he made the report of the stolen car, he did not know where it was. He stated that he had spoken to Mike, the owner of the lots on which the aforementioned paint and body and automotive repair shops were located, and that Mike did not know where the car was. Appellant stated

5

that he reported the car as stolen because after he made a claim on the car, the insurance company told him to make a police report. But then Mike spoke to some of his employees, found out that Pro-Tow was the company that had towed the car, and told Appellant. Appellant then called Pro-Tow and spoke with Justice. He testified that she initially told him that she could not give him any information about the car but that she eventually gave him Joe Rodriguez's name and phone number. Appellant called the number and left a message. He spoke with Rodriguez a couple of days later, which led him to Dakota Auto Center. Appellant stated that he had talked to Rodriguez on March 23, 2012, not in January as Rodriguez had testified.

Appellant testified that he had reported to the insurance company that he had located the car and that the insurance representative told him that it was no longer a criminal matter but a civil matter.

Appellant received a letter from the police department sent on March 29, 2012. The letter stated that his theft case was "currently on a suspended status due to lack of suspects, witnesses, or investigative leads." He called the person listed as a contact person in the letter and told her that he knew where the car was. The next contact he had with the police department was when he received a phone call from a Lewisville police officer who told him that a warrant had been issued for his arrest.

Regarding the timing of the purchase of the insurance policy, Appellant testified that he had previously had insurance on the car and had briefly let it

6

lapse during the December 2011 holidays, but in January 2012 he had switched to a new insurance carrier. He also stated that he did not speak to Rodriguez in January as Rodriguez had testified and that he did not speak to Justice in February as she had testified.

**Sufficiency of the Evidence**

In his two issues, Appellant argues that the evidence is insufficient to show that (1) he knowingly made a false statement to the police that he did not know who might have his wife's vehicle and (2) his representations were made in bad faith and for reasons other than to obtain action on a valid grievance.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3] The trier of fact is the sole judge of the weight and credibility of

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

the evidence.[4]  Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5]  Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6]  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[8]

Section 37.08 of the penal code provides,

(a) A person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to:

(1) a peace officer or federal special investigator conducting the investigation; or

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

[8]*Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

(2) any employee of a law enforcement agency that is authorized by the agency to conduct the investigation and that the actor knows is conducting the investigation.

(b) In this section, "law enforcement agency" has the meaning assigned by Article 59.01, Code of Criminal Procedure.

(c) An offense under this section is a Class B misdemeanor.[9]

The amended information charged that Appellant,

on or about the 19th day of March, 2012, . . . did then and there, with intent to deceive, knowingly make to Barry Beasley a false statement, to-wit: that he did not know of any parties who may have his wife's vehicle, and the said Barry Beasley was an employee of a law enforcement agency, namely, Lewisville Police Department, and was authorized by said agency to conduct said investigation, and [Appellant] knew that the said Barry Beasley was conducting said investigation, and the statement was material to the investigation in that it was false. [Appellant] did know of persons who may have possession of his wife's vehicle.

In his second issue, Appellant argues that the evidence is insufficient to show beyond a reasonable doubt that his representations were made in bad faith and for reasons other than to obtain action on a valid grievance. He argues that his actions were an attempt to obtain redress for what he arguably believed was an illegal taking of his wife's car and the selling of it at auction. But bad faith is not an element of a violation of section 37.08—making a false report to a peace officer—except in cases involving allegations of misconduct of law

---

[9]Tex. Penal Code Ann. § 37.08 (West Supp. 2013).

enforcement.[10]   Only in those cases does the State have the added burden of proving that a defendant's representations were in bad faith and for reasons other than to obtain action on a valid grievance.[11]   We overrule Appellant's second issue.

As for the sufficiency of the evidence that he knowingly made a false statement to the police, Appellant argues in his first issue that to sustain his conviction there would have to be some evidence that he knew persons who might have his wife's vehicle when he made the statement to Officer Beasley and that Appellant affirmatively told the officer that he did not know about those persons.  But Appellant does not dispute that he knew that he had left his wife's car at the repair shop and not in his driveway, although he reported to the police that the car was missing from his driveway.  Further, there was evidence that both Appellant and his wife knew that the car had been towed by Pro-Tow before he had filed the report, although Armease denied knowing where the car had been towed, and Appellant claimed that he did not find out about Pro-Tow until the evening of the day he had filed the theft report.

---

[10]*See id.*; *McGee v. State*, 671 S.W.2d 892, 895 (Tex. Crim. App. 1984); *Olivarri v. State*, Nos. 04-08-00056-CR, 04-08-00062-CR, 2008 WL 5050540, at *3 (Tex. App.—San Antonio Nov. 26, 2008, pet. ref'd) (mem. op., not designated for publication).

[11]*See McGee*, 671 S.W.2d at 895.

10

There is uncontroverted evidence that when Appellant reported that his wife's car had been stolen from the driveway, he knew that was untrue. He also knew that he had left the car for eighteen months at the repair shop location without paying for any repairs. The jury resolved the conflicting evidence on the timing of Appellant's knowledge of the location and possession of the vehicle against him. Considering all the evidence, and employing the appropriate standard of review, we hold that the evidence is sufficient to support the jury's verdict: a rational trier of fact could have found that the evidence supported each element of the offense alleged beyond a reasonable doubt. We therefore overrule Appellant's first issue.

## Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 3, 2014