# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00293-CR

---

**Osmani Limonta-Diaz, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-DC-17-302345,
THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Osmani Limonta-Diaz of sexual assault, *see* Tex. Penal Code § 22.011(a)(1)(A), and assessed his punishment at confinement for eleven years in the Texas Department of Criminal Justice, *see id.* §§ 22.011(f), 12.33. On appeal, appellant complains about error in the jury charge and challenges the sufficiency of the evidence. We affirm the trial court's judgment of conviction.

## BACKGROUND

The jury heard evidence that in June of 2017, Rhea Percy went out one evening—to dinner, to hear a band, and then to socialize with friends.[1] Over the course of the evening,

---

[1] The record reflects that the indictment and the trial court's jury charge refer to the complainant in this case using the pseudonym "Rhea Percy." In this opinion, we refer to the complainant using that pseudonym.

Percy had been drinking—wine, gin and tonic, specialty cocktails, beer, and shots—and towards the end of the evening felt "intoxicated" and "drunk." Percy ended the night at a bar called Pour House, where she stayed until closing time. Even though Pour House was within walking distance of her home (an apartment that she shared with her brother), she requested a ride through the RideAustin app to get home because she "never walk[ed] home at night alone drunk." She did not recall where she met the rideshare driver or how she got into his car. The last thing Percy remembered was talking to the bartender at Pour House as he put up the chairs. Her memory was "fuzzy" due to her intoxication.

Percy's next memory after the bar was trying to direct the rideshare driver to the road for her apartment's front door, which was different than the address for the apartment complex. She then next remembered the driver being in the backseat on top of her. She was lying on her back and felt her shirt being lifted up. The driver was heavy, and she felt "pinned down." She recalled trying to push the driver off of her with her arms. She next remembered "tumbling" out of the car with her purse and concert poster. She went to her apartment and banged on the door because she could not find her keys.

Percy's brother, Eric, who had been upstairs in his room playing video games, heard the knocking. He opened the door during the third round of knocks and found his sister in disarray—her hair was "messed up," her shirt was lifted up exposing her bra, and her pants were unbuttoned and unzipped. Percy immediately told her brother that she had been raped. She was "very distraught" and was "choking back tears." Eric helped Percy inside and asked who had raped her. She told him that it was her rideshare driver. At trial, Eric described Percy as "drunk"; she slurred her words and had an unstable walk. When asked to describe the level of Percy's intoxication, he said, "I would say she was more intoxicated. She was drunk. As to the

exact level, I would say it was probably a little more to the severe side of drunk, the more extreme side." Eric helped his sister to the couch and called 911. He talked to the dispatcher while Percy laid with her head in his lap sobbing. Percy showed her brother the RideAustin app on her phone, which gave the driver's name—Osmani Diaz—and a picture of the driver as well as the make of the car. Eric relayed as much information as possible to the 911 operator. Emergency medical services and police responded to their apartment.

Upon arrival at the apartment, the EMS paramedic made contact with Percy, who was on the couch "very emotionally distressed." She was crying and upset and all she could tell the paramedic was that she had been sexually assaulted by her rideshare driver; she could give no details about the assault itself. She told the paramedic—who noticed several signs of intoxication, including the smell of alcohol, slurred speech, and unsteady vision—that she had been out drinking. The paramedic conducted a general assessment of Percy, which did not indicate any life-threatening conditions; Percy had no complaint of pain or injury. He offered to transport Percy to the hospital, but she declined because, he recalled, "she didn't believe that anything could be done to help her."

When the police arrived at the apartment, Percy was, according to one responding patrol officer, "hysterical," "very withdrawn," and "crying." She was lying on the couch in her brother's lap and, the officer explained, did not want to speak to them.[2] The officer did not notice signs that Percy was intoxicated, but he testified that Percy was "very guarded" and "kept a bit of distance" between them—in fact, she had her back to the officer during most of his contact with her. One of the first things Percy said to the officer was, "I am drunk. I am to

---

[2] The testimony of several witnesses, including Percy, reflected that, because of what she had just experienced, Percy was upset that only male EMS personnel and male police officers had responded to the 911 call and that she felt frightened by the all-male presence.

blame." After Percy was able to calm down, she told the officer that she had been raped by her rideshare driver. She showed him her phone, which was still open to the RideAustin app, and the officer wrote down the information about the driver. Percy gave a general description of her attacker but was only able to give a few details about the assault itself. She told the officer that the driver had turned around and said, "I'm going to fuck you," but she was unable to tell him how appellant got into the back seat and got her clothes off. Percy also reported to the officer that during the assault, the driver made derogatory comments to her before "placing his penis in her vagina." Specifically, she told the officer that, during the assault, the driver said that "white women are whores and no one will believe you" and "I will fucking shame you." Based on Percy's demeanor, the officer did not take what Percy described to be a consensual sexual encounter.

The next day Percy went for a sexual assault forensic exam. The sexual assault nurse examiner testified at trial about what Percy told her about the assault:

> That she had been out drinking with some friends, that she had called some type of Rideshare to pick her up, and that he drove her home, that he stopped kind of in a different place than what she was expecting him to, and then he ended up — I think she said he got in the backseat with her and forced himself on her.

Percy conveyed to the nurse that her memories of the night were "fuzzy" and that she remembered the ride in "flashes." She described the rideshare driver "holding [her] down" and remarked that he was "significantly bigger than [her], so it wouldn't have taken much." Percy also reported to the nurse that in addition to the alcohol that she had consumed that night, she had taken her medication for depression, which, the nurse explained, could "potentiate the effects of alcohol."

4

The nurse testified about the injuries to Percy that she documented during the exam. During the head-to-toe portion of exam, the nurse noted a small scratch on Percy's left breast and bruises on her legs. During Percy's genital exam, the nurse observed redness on both sides of the outer labia majora, several small abrasions underneath the clitoral hood, an abrasion on the inside of the labia minora, multiple abrasions on the posterior fourchette, and pink areas around the anal sphincter. The nurse also used evidentiary swabs to collect samples from Percy for DNA testing. Subsequent forensic testing revealed semen on the smear from Percy's cervix. The nurse testified that the discovery of sperm cells on Percy's cervix was consistent with penile penetration of her female sexual organ and ejaculation by her assailant. DNA testing established that the DNA profile of the contributor of the semen from Percy's cervix matched appellant's DNA profile.

The police sex-crimes detective, who conducted the follow-up investigation, spoke with Percy several days after the rideshare incident. At that time, Percy recalled less of the sexual assault than she did the night of the offense because, the detective opined, she had imbibed a lot of alcohol that night. Percy showed the rideshare information from her phone to the detective. Through RideAustin records, the detective identified appellant as the driver and contacted him for an interview. In the interview, appellant denied ever having had sexual contact with any customer in his car, even a consensual sexual encounter.[3] Appellant explicitly denied that anything sexual had happened between him and Percy.

Following the investigation, appellant was arrested and subsequently indicted for sexual assault. The State called twelve witnesses at trial: the 911 dispatcher, Percy's brother,

---

[3] The record reflects that the interview was conducted with the assistance of a Spanish-speaking detective who interpreted.

the responding police officer, the responding EMS paramedic, the vice president of operations for RideAustin, the sexual assault nurse examiner, the DNA analyst who conducted the DNA testing in this case, the detective who presented a photo array to Percy,[4] the detective who interpreted during appellant's police interview, the investigating sex-crimes detective, and an investigator from the district attorney's office. The defense called one witness: a forensic nurse who reviewed the report of Percy's sexual assault exam and took issue with the findings. The jury found appellant guilty of sexual assault as charged in the indictment and assessed his punishment at eleven years in prison. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## DISCUSSION

Appellant raises three points of error in this appeal. In his first two points of error, he contends that the trial court erred by including certain statutory definitions of "without consent" in the court's jury charge. In his third point of error, appellant claims that the evidence is insufficient to support his conviction for sexual assault because it failed to prove that his sexual encounter with Percy was without her consent.

### Jury-Charge Error

As applicable to the indictment in this case, a person commits sexual assault if he "intentionally or knowingly causes the penetration of the . . . sexual organ of another person by any means, without that person's consent." Tex. Penal Code § 22.011(a)(1)(A). The Penal Code

---

[4] His testimony demonstrated that Percy was unable to identify anyone from the photo array as the rideshare driver who sexually assaulted her.

sets forth several circumstances in which a sexual act is deemed to be without a person's consent. *See id.* § 22.011(b)(1)–(12). As relevant to this case,

> A sexual assault . . . is without the consent of the other person if:
>
> (1)     the actor compels the other person to submit or participate by the use of physical force, violence, or coercion;
>
> . . .
>
> (3)     the other person has not consented and the actor knows the other person is unconscious or physically unable to resist; [or]
>
> . . .
>
> (5)     the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring.

*Id.* § 22.011(b)(1), (3), (5).

During the jury-charge conference, the trial judge expressed his intent to include an instruction based on the above three statutory definitions of "without consent." Appellant objected to the inclusion of the definitions relating to subsections (b)(3) and (b)(5), arguing that no evidence supported the submission of those definitions. The court overruled appellant's objection and included an instruction in the jury charge that defined "without the consent of the other person" as follows:

> A sexual assault is without the consent of the other person if:
>
> (1)     the actor compels the other person to submit or participate by the use of physical force or violence; or
>
> (2)     the other person has not consented and the actor knows the other person is unconscious or physically unable to resist; [or]

7

(3)      the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring.

In his first two points of error, appellant contends that the trial court erred when it included instructions on two of the statutory definitions of "without consent" because, he maintains, they were not supported by the evidence. Specifically, in his first point of error, appellant argues that the jury should not have been instructed on the statutory definition of "without consent" set forth in subsection (b)(3) because no evidence showed that Percy was unconscious or physically unable to resist appellant. Similarly, in his second point of error, he argues that the jury should not have been instructed on the statutory definition of "without consent" set forth in subsection (b)(5) because there was no evidence showing that Percy was unaware that she was engaging in a sexual act with appellant.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error has been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, 36.15, as is the case here, reversal is required if the appellant has suffered "some harm" from the error. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Mendez*, 545 S.W.3d at 552; *see Almanza*, 686 S.W.2d at 171.

8

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez*, 545 S.W.3d at 552. Part of that duty includes applying the law to the facts adduced at trial. *Burnett v. State*, 541 S.W.3d 77, 84 (Tex. Crim. App. 2017); *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004). Thus, although the trial court is obligated to include in the jury charge statutory definitions that affect the meaning of elements of the crime, *Arteaga*, 521 S.W.3d at 334; *Ouellette v. State,* 353 S.W.3d 868, 870 (Tex. Crim. App. 2011), the charge must also be tailored to the facts presented at trial. *Burnett*, 541 S.W.3d at 84. That is, the trial court must submit to the jury only the portions of a statutory definition that are supported by the evidence; to do otherwise is error. *See id.*; *see also Gray*, 152 S.W.3d at 128 ("Jury charges which fail to apply the law to the facts adduced at trial are erroneous.").

The Penal Code does not define either "unconscious" or "unaware," but the plain meaning of these adjectives connotes a lack of awareness, knowledge, or perception. *See Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (stating that when Penal Code does not define word, we "turn to the common, ordinary meaning of that word"); *see, e.g.*, *Unconscious*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "unconscious" as "without awareness; not conscious"); https://www.merriam-webster.com/dictionary/unconscious (defining "unconscious" as "not knowing or perceiving: not aware"); https://www.ahdictionary.com/word/search.html?q=unconscious (defining "unaware" as "not aware or cognizant"); https://www.dictionary.com/browse/unconscious (defining "unaware" as "not aware or conscious; unconscious").

The evidence at trial showed that Percy was intoxicated. She expressed that, given her intoxication, she was incapable of consenting to any sexual activity that night. She

9

also denied that it was possible that she took off her own clothes or that she said something to appellant that indicated a willingness to have sex with him.

The evidence also demonstrated that, due to her intoxication, Percy had lapses in awareness, perception, and knowledge throughout the rideshare, which resulted in memory gaps. For example, Percy remembered being in the bar at closing time but not requesting a rideshare or getting into appellant's car. The patrol officer's testimony showed that shortly after the incident, Percy recalled the driver turning around and saying, in an offensive manner, that he was going to have sex with her, but she could not tell the officer how appellant got in the back seat. She remembered being on her back "pinned down" and described derogatory comments that appellant made to her before he put his penis in her vagina, but she could not recall how appellant got her clothes off or appellant taking his clothes off. When talking to the officer and the paramedic, she remembered that appellant had used a condom. Percy also remembered appellant being on top of her, feeling him lifting up her shirt, and trying to push him off with her arms, but then her "next memory" was "tumbling out of the car." The following day, Percy told the sexual assault nurse examiner that she "thought" that appellant had kissed her and that he touched her with his hands, but she could not recall, at that time, the exact physical contact. Nor could she remember whether appellant had penetrated her vaginally, anally, or orally or if he had used a condom. The sexual assault nurse examiner documented a loss of consciousness in the SAFE report, which she explained could be either "somebody remembering that they were out and woke up or that they have memory gaps."

As noted above, the evidence reflected that Percy attempted to push appellant off of her at some point during the incident. The nurse testified that alcohol acts as a restraint because "when someone has had a lot to drink," their ability to have strength and coordination in

their movements is affected. She explained that alcohol is "something that would prohibit someone from having full muscle abilities to do what they need to do for movement." The fact that Percy tried at some point to resist but her clothes were not torn, she suffered no injuries, and she was ultimately unsuccessful in pushing appellant off, supports the inference that she was unable to physically resist because she was impaired by her level of intoxication.

Because the evidence showed that Percy was intoxicated during the rideshare and indicated that she experienced periods of unawareness because of it, the evidence raised fact issues as to whether Percy had consented to having sexual intercourse with appellant and whether she was unconscious, physically unable to resist, or unaware that the sexual assault was occurring. Accordingly, the trial court did not err by including statutory definitions of "without consent" based on subsections (b)(3) and (b)(5) of Penal Code section 22.011 in the jury-charge instruction defining "without consent." *See Ouellette*, 353 S.W.3d at 870 (affirming submission of particular statutory definition of intoxication because "while evidence that the appellant was intoxicated by drugs was circumstantial and not obviously overwhelming, it is nonetheless present in the record"); *cf. Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017) (clarifying that jury-charge instruction on anti-defensive issue is appropriate when some evidence at trial raises it); *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013) (explaining that "even a minimum quantity of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense" (citing *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007))). We overrule appellant's first two points of error.

11

## Sufficiency of the Evidence

In his third point of error, appellant asserts that the evidence is insufficient to prove that he sexually assaulted Percy because, according to appellant, it failed to prove that he penetrated Percy's sexual organ without her consent.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, — U.S. —, 136 S. Ct. 709 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to

12

guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 136 S. Ct. at 715 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence

alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

The indictment in this case alleged that appellant "did then and there intentionally and knowingly cause the penetration of the female sexual organ of Rhea Percy (a pseudonym), with the sexual organ of the Defendant, without the consent of Rhea Percy (a pseudonym)."[5] *See* Tex. Penal Code § 22.011(a)(1)(A). In prosecuting a sexual assault, the State has the burden to prove that the sexual act at issue was not consensual. *Davis v. State,* 581 S.W.3d 885, 889 (Tex. App.—Dallas 2019, pet. ref'd); *see Moon v. State*, 607 S.W.2d 569, 570 (Tex. Crim. App. 1980) ("Lack of consent to the sexual intercourse in a [sexual-assault] case is an essential element of the State's case."). As previously discussed in our analysis of appellant's first two points of error, the Penal Code sets forth several circumstances in which a sexual assault is deemed to be without a person's consent, and the trial court instructed the jury on three. Appellant challenges the sufficiency of the evidence as to all three manners of "without consent" submitted to the jury.

He first argues that no evidence adduced at trial showed that appellant used physical force or violence against Percy to compel her to submit to or participate in sexual intercourse with him. *See* Tex. Penal Code § 22.011(b)(1). He analyzes the testimony of each

---

[5] The indictment tracked the language of the sexual-assault statute that defines the offense but did not allege any particular manner of "without consent" based on the listed statutory definitions. However, when a statutory term or element is defined by statute, the charging instrument does not need to allege the definition of the term or element. *State v. Ross*, 573 S.W.3d 817, 833 (Tex. Crim. App. 2019); *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex. Crim. App. 2017); *Geter v. State*, 779 S.W.2d 403, 405 (Tex. Crim. App. 1989). Typically, the definitions of terms and elements are regarded as evidentiary matters. *Ross*, 573 S.W.3d at 833; *Zuniga*, 512 S.W.3d at 907; *Marrs v. State*, 647 S.W.2d 286, 289 (Tex. Crim. App. 1983).

witness, noting the evidence that indicated a lack of injuries or torn clothing, and asserts that the testimony of each witness failed to prove that appellant used force or violence to compel Percy to submit to him. However, when examining the legal sufficiency of the evidence, the reviewing court must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Zuniga*, 551 S.W.3d at 733; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *see Murray*, 457 S.W.3d at 448 (observing that "[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence" (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)). More importantly, "[t]here are no set criteria by which it can be determined that force either has or has not been applied in any particular [sexual-assault] case, but rather, the facts of each individual case determine the issue." *Brown v. State*, 576 S.W.2d 820, 823 (Tex. Crim. App. 1978); *see, e.g.*, *Edwards v. State*, 97 S.W.3d 279, 291 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("Explicit verbal threats and physical injury are not necessary to prove a defendant compelled a victim's participation.").

Percy testified that appellant was on top of her while she was on her back in the back seat of his car. He was "heavy," and she felt "pinned down." She also said that she tried to push appellant off, and she demonstrated to the jury how she attempted to push him off. Immediately after the incident, Percy told her brother that she had been "raped," which is a term that implies force used to compel sexual activity against a person's will. *See, e.g.*, https://www.merriam-webster.com/dictionary/rape (defining "rape" as "unlawful sexual activity and usually sexual intercourse carried out forcibly . . . against a person's will"); https://www.ahdictionary.com/word/search.html?q=rape (defining "rape" as "crime of using force or the threat of force to compel a person to submit to sexual intercourse"). When

15

describing the assault to the sexual assault nurse examiner, Percy reported that appellant "forced" himself on her.

In addition, the nurse explained at trial that body weight can be used as physical force and a way to restrict movement. The evidence reflected that Percy is a petite woman who is 5'1" tall and weighed 122 pounds at the time of the incident. She described her assailant as being 5'7'' or 5'8" and weighing approximately 200 pounds. The evidence established that appellant is 5'8'' and heavyset. While appellant's specific weight does not appear in the record, the jury had the opportunity to view both Percy and appellant and compare their physical sizes. Given the disparity of their sizes, appellant's position on top of Percy, and her unsuccessful attempts to push appellant off, the jury could reasonably infer that appellant restrained Percy with his body weight and that this constituted a use of physical force.

Further, the evidence of Percy's physical appearance and demeanor immediately after the incident indicated that she was compelled to submit to the sexual intercourse. Percy's brother observed that she was disheveled—her hair was "messed up," her shirt was lifted up exposing her bra, and her pants were unbuttoned and unzipped—and that she was "very distraught" and "clearly under a lot of duress." The paramedic and responding police officer confirmed that Percy was "very emotionally distressed" and "hysterical." In addition, the evidence of injuries to and around Percy's sexual organ—redness and multiple abrasions—corroborates the notion that force was used to achieve penetration of her sexual organ. Thus, from the combined and cumulative force of the evidence, and reasonable inferences from it, the jury could rationally find that appellant compelled Percy to submit to or participate in sexual intercourse with him by using physical force.

16

When the jury charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the evidence is sufficient to support a conviction if the evidence is sufficient to support conviction for any theory authorized by the jury charge. *Campbell v. State*, 426 S.W.3d 780, 786 (Tex. Crim. App. 2014); *Anderson v. State,* 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *see Guevara v. State*, 152 S.W.3d 45, 52 (Tex. Crim. App. 2004) ("[W]hen multiple theories are submitted to the jury, the evidence is sufficient to support a conviction so long as the evidence is sufficient to support conviction for one of the theories submitted to the jury."). Thus, because the evidence supported a finding that appellant's sexual intercourse with Percy was without her consent under subsection (b)(1) of Penal Code section 22.011, the evidence was sufficient to support appellant's conviction for sexual assault. Nevertheless, we further conclude that the evidence also supports a jury finding that the sexual intercourse was without Percy's consent under subsections (b)(3) and (b)(5) of Penal Code section 22.011 as well.

Concerning the two other manners of "without consent" submitted to the jury, appellant asserts that the evidence failed to show that he knew that Percy was unconscious, physically unable to resist, or unaware that the sexual assault was occurring. He argues that "[t]his is not the type of situation where the complainant was so drunk that she was unconscious or unaware of what was occurring," pointing to evidence that Percy told others that she had been violated—her subsequent disclosure to her brother that she had been raped and her identification of who raped her, her description to the police officer of the derogatory comments that appellant made before he "put his penis in her vagina," and her report to the paramedic and the police officer that appellant had worn a condom. However, the evidence repeatedly demonstrated that Percy's memory surrounding the incident was "fuzzy," that she remembered just "flashes" of

17

what happened, and that she later recalled only "bits and pieces." In the exercise of its role as factfinder, the jury was entitled to believe the evidence concerning Percy's intoxicated state and determine how, or whether, it impacted her experience that night. As discussed previously, multiple witnesses testified about Percy's intoxication, including her brother who observed, immediately after the incident, that she was on the "more severe side" and "more extreme side" of "drunk," seemed unaware that her clothing was in disarray, and was unsteady to the point that he had to help her to the couch. Given the evidence of Percy's intoxication, the jury could reasonably conclude that her memory gaps represented times that she was unaware due to her level of intoxication. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (recognizing that jurors may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when drawing inferences from evidence); *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013) (same).

Appellant maintains that Percy's testimony that she was aware of what was happening and that she was not unconscious demonstrated that she was "not totally unconscious and as a result unable to fend off an attacker." However, nothing in the statute requires "total" or extended unconsciousness. Further, Percy did not testify that she was not unconscious. Rather, her testimony indicated that she was "not passed out unconscious in the back of the car" because she remembered being in the car; that she was "not completely unconscious" (but was not able to "think things through"); and that she did not recall being unconscious. Similarly, Percy did not testify that she was aware that a sexual assault was happening. Instead, her testimony indicated that "at one point" she was aware that "something" was happening to her and that she was "aware enough" at times to understand that "some sort of sex act was occurring." However, as

18

noted previously, the record repeatedly demonstrated that, due to her intoxication, Percy experienced periods of unawareness during the rideshare.

Moreover, even had Percy testified as appellant claims, the jury was entitled to resolve any evidentiary inconsistencies between her testimony and the other evidence demonstrating her intoxication and periods of unawareness in order to determine whether Percy was unconscious, physically unable to resist, or unaware of the sexual assault occurring. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) (observing that jury "may accept one version of the facts and reject another, and it may reject any part of a witness's testimony"). We must defer to the jury's resolution of any alleged conflicts or inconsistencies. *Zuniga*, 551 S.W.3d at 733; *see Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) ("A reviewing court is thus 'required to defer to the jury's credibility and weight determinations.'" quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)).

Finally, the evidence showed that appellant picked Percy up at a bar at closing time. She had called for a rideshare because she was too drunk to walk home. Both Percy's brother and the paramedic testified that Percy exhibited observable signs of intoxication, which indicates that her intoxication was apparent to others. The jury could have inferred that it was apparent to appellant as well. Thus, viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that, given Percy's intoxication, appellant had sex with Percy while he knew she was unconscious, physically unable to resist, or unaware that the sexual assault was occurring. *See Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993) (explaining that if assent is not given and "actor knows that the victim's physical impairment is such that resistance is not reasonably to be expected, sexual intercourse is 'without consent'").

19

Appellant concludes his sufficiency challenge by asserting that there was no evidence to "disprove" his defense that he and Percy engaged in consensual sex in the backseat of his car. This assertion ignores the evidence of statements that appellant made to the detective in which he denied having any sexual encounter—consensual or nonconsensual—with Percy, or any rideshare customer, in his car. More importantly, however, the question in evaluating the sufficiency of the evidence is not whether the evidence disproves the defensive theory but whether the jury's finding of guilt was justified considering the evidence that was admitted at trial. The circumstantial evidence in this case and reasonable inferences from it support a rational finding that Percy did not consent to sexual intercourse with appellant but that he compelled her to submit through the use of physical force or that, due to her intoxication, Percy was unconscious, physically unable to resist, or unaware that the sexual assault was occurring. Therefore, based on the combined and cumulative force of the circumstantial evidence along with the reasonable inferences drawn from it, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant's sexual intercourse with Percy was without her consent. Accordingly, we hold that the evidence is sufficient to support appellant's conviction for sexual assault. *See Nisbett v. State*, 552 S.W.3d 244, 266–67 (Tex. Crim. App. 2018). We overrule appellant's third point of error.

## CONCLUSION

Having concluded that the trial court did not err by including the complained-of statutory definitions of "without consent" in the jury charge and that the evidence is sufficient to support appellant's conviction for sexual assault, we affirm the trial court's judgment of conviction.

20

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   February 5, 2020

Do Not Publish